(92 N. W. Rep. 381.)

---

STATE *ex rel* GEORGE J. WALKER *vs.* McLEAN COUNTY.

---

**Quo Warranto—Correct Practice.**

Quo warranto proceedings. In this proceeding the relator, George J. Walker, a private citizen, asks leave to file in this court an information in the nature of quo warranto; and counsel for the relator at the same time asks leave to file similar informations in behalf of two other private citizens against the counties of Pierce and McHenry, respectively. The several informations sought to be filed allege, in substance, that each of said counties has encroached upon a portion of the territory lying within the boundaries of Church county, and by their combined action have absorbed all of said territory, and that said counties are now, and since the year 1902 have been, unlawfully exercising governmental control, as counties, over all the territory of Church county. It is conceded that Church county has never been organized as a county; and that the action taken by the counties of McLean, Pierce, and McHenry was had under color of a statute, viz., under chapter 50, Laws 1891. For the purposes of the case, it is conceded that said statute is unconstitutional. The applications of relators are opposed by the attorney general of the state. The relators ask leave to file informations in the nature of quo warranto, and do not ask that the writ of quo warranto be issued. *Held*, construing section 87, Const., that in this respect the relators have pursued correct practice.

**Proper Remedy against Municipal Corporations, When.**

*Held*, further, in cases such as this, that this remedy may be resorted to where a municipal corporation has been guilty of usurping franchises by extending its corporate authority beyond its lawful boundaries.

**Jurisdiction—District Courts and Judges have Original.**

*Held,* further, that, under the constitution of the state, district courts and the judges thereof have original jurisdiction in this class of cases, and may proceed by information, and the remedy is also fully attainable in such courts by a civil action.  See Const., § 103; Rev. Codes 1899, § 5741.

**Failure to Apply to District Court not Sufficiently Explained.**

*Held,* upon the facts stated in the opinion, that sufficient reason is not shown in the moving papers why the relators did not seek for relief in the district courts having original jurisdiction.

**Original Jurisdiction of Supreme Court—Exercised When.**

*Held,* further, that the jurisdiction of this court is primarily appellate, and that when the original jurisdiction of this court is invoked, under section 87 of the state constitution, the prerogative powers of this court will only be put forth in defense of the state, its franchises, and the liberties of the people.

**Remedy by Quo Warranto in Supreme Court not matter of Strict Right.**

*Held,* further, that the remedy by quo warranto in this court is not a matter of strict right, and as such available to a private relator.  In this court the remedy in all cases rests in the sound discretion of this court, and ordinarily the remedy will be withheld unless the same is sought in behalf of the state by the attorney general.

**Application Denied.**

For reasons stated at length in the opinion, the applications to file the informations are denied upon the merits.

Application by the state, on the relation of George J. Walker, for leave to file an information in the nature of quo warranto against McLean county, N. D.  Application denied.

*Henry S. Klein* and *S. E. Ellsworth,* for relator.

*O. D. Comstock,* Atty. Gen., for defendant.

WALLIN, C. J.  This is an application to this court for leave to file an information in the nature of quo warranto.  The application is made on the relation of George J. Walker, a private person, who is represented in this court by his attorneys, Henry S. Klein and S. E. Ellsworth.  The Honorable O. D. Comstock, attorney general, opposes the application.  The papers presented to the court consist of a written motion, signed by the attorneys for the relator, to which is annexed an information, verified by the relator, and these are supplemented by the affidavit of said S. E. Ellsworth. Omitting formal parts, the motion is as follows: "Now comes the relator above named, by his counsel, and moves the court that he be allowed to file in this court an information in the nature of quo warranto, which is hereunto attached and herewith presented, and that the respondent named in said information be, by a writ of this court, required, at a convenient time and place, in said writ named, to answer thereto, and show by what authority it holds and exercises the powers and functions therein named and described over the inhabitants of the said territory therein described."  The information is as follows:  "The above-named relator, George J. Walker, re-

spectfully gives the court to understand and be informed: First. That McLean county, the above-named respondent, is a municipal corporation regularly organized under and pursuant to acts of the legislative assembly of the territory of Dakota, enacted at its regular sessions in the years 1883 and 1885, and now existing as one of the counties of the state of North Dakota. Second. That your relator is a resident and taxpayer of that territory or district of country within the state of North Dakota, adjoining the said county of McLean, and described as follows, to-wit, townships 149 and 150 north, of ranges 74, 75, 76, 77, 78, 79, and 80 west of the fifth principal meridian, which said territory is all included in, and forms part of, the larger district of country that was by an act of the legislative assembly of the territory of Dakota, enacted in its regular session in the year 1887, created and constituted as the county of Church. The said territory above described has never at any time been legally annexed to said McLean county, or incorporated therein, by any valid or constitutional enactment. Third. In or about the year 1892 the said respondent, McLean county, without any warrant, grant, or authority of law whatsoever, usurped and intruded into, and from that time to the present has unlawfully held and exercised, governmental functions and franchises over the people of the said territory hereinbefore described, in levying and collecting taxes, and in claiming and exercising all the powers, franchises, and functions delegated to legally organized counties by the laws of the state of North Dakota, in, over, and upon the inhabitants and property of the said territory. Wherefore your relator prays that the said respondent be required to answer in the said matters concerning which the court is hereby informed, that it be ousted forever from the exercise of said usurped powers and functions over the said district of country hereinbefore described, and that such other and further relief may be given against the unlawful acts of said respondent as may appear to be just and proper." The affidavit of S. E. Ellsworth is as follows: "*The State of North Dakota, ex rel. George J. Walker et al.,* as Relators, v. *McLean County, North Dakota,* v. *McHenry County, North Dakota,* v. *Pierce County, North Dakota.* State of North Dakota, County of Grand Forks—ss.: S. E. Ellsworth, being first duly sworn, upon his oath deposes and says that he is attorney for the relators above named, and for each of them; that on or about the ——— day of June, A. D. 1901, he prepared informations in the nature of quo warranto in all respects similar to those entitled as above, and presented herewith upon this application to this court, and caused each of said informations to be duly verified by one of the said relators as aforesaid. Thereafter, on the 2d day of July, A. D. 1901, affiant presented the said information to O. D. Comstock, attorney general of North Dakota, and after fully explaining the facts leading to the preparation of said informations, and the aim and purpose of the same, requested that Mr. Comstock, as the prosecuting officer of the state, and on behalf of the state,

apply to the district court of the proper district for writs of quo warranto directed to the respondent named in said informations, or in case he, the said attorney general, did not care to appear and act personally in the matter, then to allow such application to be made in his name as attorney general of the state. Mr. Comstock, after considering the matter, replied that, in his opinion, there were other ways of getting it than by quo warranto, and that he would have nothing to do with the matter, either by applying in person for the writs, or allowing his official signature to be used for that purpose. He gave no reason for his refusal to act, other than that above mentioned. Thereafter, on the 3d day of July, 1901, affiant appeared before Hon. John F. Cowan, judge of the district court for the Second judicial district of said state, in which district are situated the counties of Pierce and McHenry, two of the respondents named, and, after presenting the informations against Pierce and McHenry counties to Judge Cowan, informed him of the refusal of the attorney general to act, and asked that he, the said judge, grant leave to file the said informations in the district court at the instance of the relators named, and issue writs of quo warranto directed to each of the said respondents as aforesaid. Judge Cowan stated that he would take a short time to consider the application, and requested that affiant leave the information in his hands for that purpose. Affiant did so, and from that time to the present no action whatever in the matter has been taken by Judge Cowan. About August 1, 1901, affiant wrote to Judge Cowan, calling his attention to the fact that there was no response to his application in the said cases, and urging the importance to relators of some speedy hearing in the matter, and the great inconvenience resulting to them from delay. Affiant's letter bore on the outside of the envelope his name and address, and has not been returned to him; neither has he received any reply from Judge Cowan, nor any communication whatever explaining the delay or the neglect on his part to take action in regard to affiant's application as aforesaid. Affiant further says: That the said county of Church, referred to in said informations, has now, as he is informed and believes, a population largely in excess of one thousand, and has within its limits more than one hundred fifty legal voters of this state. Within the past two years the county has increased greatly in population, settlement is rapidly progressing in all parts, and large and important interests of different kinds are developing. That a proper and just determination of the questions presented by said application will become more difficult with the further advance of population and development of the material resources of the state and county, and that delay in the determination of its political status will affect injuriously the interests of said county. Affiant further says that McLean county, one of the respondents, is in the Sixth judicial district, and the other two, Pierce and McHenry counties, are in the Second judicial district; that he is informed and believes public sentiment

and feeling in all three of the counties named is, strongly opposed to any relinquishment of their claim to jurisdiction over part of Church county; that speedy and adequate relief against the claims and illegal acts of said respondents cannot be obtained in the district courts of either district, or in any other tribunal of this state, except in the supreme court." At the time these papers were presented to this court, other and altogether similar papers were presented by ,the same counsel, whereby leave was asked to file informations, respectively, against the counties of Pierce and McHenry. The several informations are substantially the same, and hence all the applications will be considered together, and disposed of by a single order.

Briefs in support of the application have been submitted by counsel for the relator, and the attorney general has presented a brief in opposition thereto.

With reference to a preliminary matter of practice, we deem it proper to notice that the relator has not, by this proceeding, asked this court to issue the writ of quo warranto, but, on the contrary, has applied to the court for leave to file an information in the nature of quo warranto. In this, counsel have pursued the proper course. It is true that the state constitution, by section 87, expressly confers upon this court the power to issue the writ of quo warranto; and it nowhere authorizes this court, in terms, to proceed by information in the nature of quo warranto. Nevertheless, under the established construction of similar provisions in the constitutions of other states, it is held that the power to issue the writ embraces the authority to proceed by information, and the latter course is now almost universally pursued in all courts of this country. All the remedies which anciently could be had by the writ are now attainable by information in the nature of quo warranto, or in some states, as in this, by means of a civil action. As to the practice, see *State* v. *Elliott* (Utah) 44 Pac. 248; High, Extr. Rem. § 591; *State* v. *West Wisconsin Ry. Co.*, 34 Wis. 197; *People* v. *City of Oakland* (Cal.) 28 Pac. 807; Rev. Codes 1899, c. 24 (Code Civ. Proc.). In the case at bar, counsel for the relators have, we think, properly assumed that the remedy by quo warranto may, in some form, be invoked in cases such as this, where it is alleged that a municipal corporation has been guilty of usurping political franchises by extending its governmental authority beyond and outside of its lawful boundaries. As to applying the remedy to such cases, as against the offending corporation, there is a conflict of judicial opinion; but, in our judgment, the weight of authority supports this practice. See *State* v. *Board of Com'rs* (Minn.) 69 N. W. Rep. 925, 35 L. R. A. 745; *People* v. *City of Oakland* (Cal.) 28 Pac. Rep. 807; *People* v. *City of Peoria* (Ill.) 46 N. E. Rep. 1075; *State* v. *City of Cincinnati*, 20 Ohio St. 18. We shall therefore concede the general proposition that quo warranto will lie to correct such alleged abuses and usurpations of corporate power as are here complained of, and hence the question

is presented whether, upon the showing made by the relator, he is entitled to the benefit of the remedy at the hands of this court. This question is by no means free from difficulty and embarrassment. To properly solve the same, it must be premised that the district courts of the state have ample and undoubted original jurisdiction in quo warranto cases. Under the constitution of the state, the district courts and the judges thereof have authority to issue writs of quo warranto, and, as we have seen, the remedy of quo warranto is also fully attainable through the more familiar medium of a civil action, which action can be instituted only in the district courts of the state. See section 103, Const.; also Rev. Codes 1899, § 5741, and *People* v. *City of Oakland, supra.* It should further be mentioned that the jurisdiction of this court is primarily appellate, and that the original jurisdiction of this court can be successfully invoked only in exceptional cases, and, when invoked, the several writs which it is authorized to issue are to be regarded as strictly prerogative writs. This construction of the constitutional powers of this court with respect to original cases has the support of an unbroken chain of decisions in this state, extending from the organization of the court to the present time. See, among other adjudications, *State* v. *Nelson Co.,* 1 N. D. 88, 45 N. W. Rep. 33, 8 L. R. A. 283; 26 Am. St. Rep. 609; *State* v. *Archibald,* 5 N. D. 359, 66 N. W. Rep. 234; *Elevator Co.* v. *White* (N. D.) 90 N. W. Rep. 12; and the recent case of *State* v. *Wilcox* (N. D.) 91 N. W. Rep. 955. From these cases it must follow in this, as in all similar applications made to this court, that a preliminary question is presented, viz., whether the suitor is seeking a remedy in the proper forum. In disposing of this question it will not meet the issue to simply declare that the power to issue the enumerated writs is expressly conferred by section 87 of the state constitution. It is only by a consideration of all the cognate provisions of the constitution that we can arrive at a true and comprehensive conception of the distribution of judicial power among the various courts of the state.

The precise question under consideration was carefully considered in *State* v. *Elliott, supra,* and we gladly avail ourselves of a portion of the opinion in that case, which meets our full approval. The court say: "It will be noticed that there are five writs of which the supreme court has original jurisdiction, and very probably many controversies will arise for which one or the other of these writs will afford a proper remedy. Hence, if we were to assume jurisdiction of every such controversy which might be brought before us, regardless of whether the state had a special interest therein, or whether it presented any special exigency, it can readily be perceived that most of our time would be consumed in hearing and determining cases which could more speedily and conveniently be heard and determined in an inferior court. This would seriously impair the usefulness of this tribunal as an appellate court, and yet its appellate power was the main object of its creation. No construction which would render such a result possible is warranted by the provisions

of the constitution relating to the judicial department. From the general policy indicated, and the language used, it is manifest that this tribunal was intended by the framers of the constitution to be essentially a court of appeals; and therefore we will not assume jurisdiction, under the grant contained in section 4, at the relation of private parties, except in cases which present some special reason or some special or peculiar emergency, or where the interests of the state at large are shown to be such as to render it apparent that the interests of justice require its exercise. The remedy provided by the constitution, authorizing proceedings in inferior tribunals, must in all cases be followed, unless it shall be made to appear to the satisfaction of this court that there is an urgent necessity for the interposition of its power. Where, as in this case, the appellate court of the state and inferior courts of general common-law powers are vested with jurisdiction in quo warranto, the appellate court may properly refuse to assume original jurisdiction in matters where the inferior courts have ample power, and can, by entertaining the information, afford adequate relief; and the right of the appellate court to exercise its discretion in granting or withholding leave to file an information in the nature of quo warranto is not limited. Nor is the discretionary power of the court exhausted until it has permitted the information to be filed." The courts of the state of Wisconsin have had occasion to consider the same general question here involved, and have reached conclusions in entire harmony with those announced by the supreme court of Utah. See citations in the North Dakota cases upon this point, above cited. We are therefore required, in deciding the question presented, to apply the principles announced in these cases to the facts now before this court.

It appears from the moving papers that, before the application was presented to this court, the relator had prepared information "in all respects similar" to those now presented to this court, and caused each of such informations to be verified by one of the relators. Such informations were, however, framed for presentation to the district court, and it appears that counsel for the relators presented the same to the attorney general of the state, and, after explaining the nature and contents of such informations, the relators' counsel requested the attorney general to "apply to the district court of the proper district for writs of quo warranto directed to the respondents named in said informations, or in case he, the said attorney general, did not care to appear and act personally in the matter, then to allow such application to be made in his name as attorney general of the state." To this request it appears that the attorney general replied that "he would have nothing to do with the matter." Upon such refusal, counsel for the relators applied to the district court for the counties of Pierce and McHenry for the writs he was seeking; and, in doing so, counsel, at the request of the district court, left said informations in the hands of the presiding judge of that court. It further appears that the district court, by remaining silent

in the premises, has practically refused to issue the writs or to entertain the informations as a basis for further proceedings in that court, whereupon the relator, without further attempts to obtain a hearing in the court below, has presented his application to the supreme court.

We do not wish to rule in this case, nor to intimate an opinion to the effect, that a mere refusal on the part of the district court, after a proper application, to entertain quo warranto proceedings in behalf of a private relator who sees fit to champion public interests in which he has no special interest, will alone suffice to give this court jurisdiction of such a proceeding. But in the present case it suffices to say that, in our judgment, no proper effort has been made in behalf of the relator to obtain a hearing in the district court. One of the respondents (McLean county) is not situated in the judicial district· in which the relator sought a remedy. Nevertheless the relator, so far as appears, wholly failed to apply to the judge of the district · court in which McLean county is situated for leave to file an information. For all that appears, the district court for McLean county would, on a proper application therefor, have acted upon the information, and thereby initiated the litigation, which in due course could have been brought to this court on appeal as a test case. Nor is this all. The application which was made to the district court appears to have been entirely irregular. The statute conferring upon suitors the privilege of seeking quo warranto remedies by means of civil actions was enacted for the purpose of denuding the remedy of its many technicalities, and thereby affording litigants a plain and adequate remedy by a familiar form of court procedure. But in the case at bar no attempt was made in behalf of the relators to institute a civil action. It does not appear that a summons or a complaint was ever framed in any of the cases, or that the attorney general was ever requested to appear in behalf of the state in any civil action to be instituted in behalf of the relators, or either of them, or that he ever refused to co-operate in bringing civil actions in the premises. Moreover, a perusal of the moving papers fails to disclose any allegations showing or tending to show that special facts exist in the present cases, calling for speedy action in the courts. The existing political status in the several counties concerned is one which has existed for a period of ten years, and nothing appears tending to show that any actual wrong or inconvenience has been suffered by individuals or by the public at large as a result of the alleged usurpations of franchises. Upon such a showing, we discover no special exigency calling for the interposition of this court at the instance of any private relator. From our standpoint, the case is one calling for unusual caution, and the exercise of great deliberation on the part· of the judicial department of the state. Certainly nothing in this case calls for the hasty action which would be involved if this court should initiate proceedings by putting forth its prerogative powers in opposition to the advice of

the attorney general. · If the attorney general, upon a proper request to bring a civil action in the district court, had refused to do so, such refusal would have laid a foundation upon which the relator could have moved in the district court for leave to sue as a private relator in behalf of the state. If such a motion were made, the district court presumptively would have taken some action in the cases, which action, in due course, could have been reviewed by this court as an appellate tribunal.

Upon the considerations already stated, we are, in our judgment, justified in refusing to assume original jurisdiction in these cases. But there is another factor of prime importance, and one relating to the merits of the application, which, in our opinion, leads to the same conclusion. In these cases the remedy of quo warranto is not sought as a means of exercising superintending control of an inferior court, or in aid of the appellate jurisdiction of this court. On, the contrary, the relator is before this court with the avowed purpose of invoking its original powers. In such cases, as has been repeatedly held, the enumerated writs are not writs or right, but are strictly prerogative writs, and the same will issue only in cases *publici juris,* where the sovereignty of the state, or its franchises and prerogatives, or the liberties of its people, are directly, and not remotely, involved. In this class of cases the attorney general of the state, who is a constitutional officer, and one whose duty it is to represent the state and to vindicate its authority, is the proper person to initiate the proceedings; and it is his duty, as a sworn officer, to ask leave of this court to file an information in all cases where, to protect the interests of the state, it becomes necessary to invoke the prerogative jurisdiction of this court. True, cases have arisen, and may again arise, in which this court will, ·for peculiar reasons, assume original jurisdiction at the instance of a private relator, but, as was said in *State* v. *Wilcox, supra,* "the cases are few and quite exceptional in which this court will, in behalf of the state, assume original jurisdiction at the instance of a private citizen." Ordinarily a private person, who volunteers as a champion of only public rights, and as such invokes the prerogative writs, will be regarded as an intermeddler. It appears by the information, and more fully by the briefs of counsel in behalf of the relator, that the relator has suffered no wrongs peculiar to himself, but, on the contrary, the relator appears in this court solely as a champion of the state, and for the ostensible purpose of protecting governmental franchises from abuse. In presenting the case of the relators, counsel have first called the court's attention to the fact that the county of Church, within which there never has been an attempt to organize as a county, is nevertheless a legally created county, in this: that it has been named and its boundaries have been defined by law. Counsel next proceed to call attention to the allegations of the informations, which are to the effect that the counties named as respondents have respectively extended their authority and jurisdiction as counties over a portion of the territory

of the county of Church, and as a result of such combined action the entire territory of Church county has been absorbed, and, as is claimed, is unlawfully appropriated by the respondents for governmental purposes. It is conceded that the action of the respondents, the several counties, which is here complained of, was taken under color of law, and in pursuance of the express permission of a statute enacted by the state legislature and approved March 2, 1891. The act referred to is entitled "An act to increase the revenues of the state by changing and increasing the boundaries of the counties of Pierce, McHenry, Bottineau, Ward, McLean, Williams, Billings, Stark, Morton and Mercer; and by repealing the act entitled: 'An act pertaining to the subdivision of the counties of Wallette and Howard, Dakota territory,' approved March 9th, 1883." See chapter 50, Laws 1891. This statute, by its terms, undertook to change and increase the boundaries of 10 counties, and by its sweeping provisions a political status was sought to be established which would embrace a territorial area of vast extent. The record before us does not disclose what particular action was taken by the several counties named in the act, except as to the three named as respondents; but as to the other counties, the reasonable presumption is that action was taken therein pursuant to the authority conferred by the act. It appears that the respondent counties, McLean, Pierce, and McHenry, have, pursuant to the provisions of the act, proceeded to increase and change their boundaries, and in doing so have extended their jurisdiction as counties over the territory in which the relators severally reside, and in which they are taxpayers; and such action has resulted in the absorption of the entire territory embraced within the original boundaries of Church county, as such boundaries were defined by the statute which created and named that county.

Upon this showing, especially with reference to the fact that the prerogative writ sought is not a writ of right, available to a private suitor, but is, on the contrary, a writ of grace, and one to be granted or withheld by the supreme court as sound discretion may dictate, it will be proper carefully to consider the existing political conditions in the territory involved in this proceeding, and, in so doing, take account of the conditions which will be superinduced within the territory in question if the existing governmental status therein were to be overthrown as a result of these proceedings. Before assuming jurisdiction of these cases, it is, in the opinion of this court, very important to consider the consequences which will necessarily ensue if the relief asked by the relators is granted by this court; and this more especially in view of the entire want of power in this court either to rehabilitate the political machinery sought to be destroyed, or to create a new governmental status within the extensive region which would be affected if the relief asked were granted. It would be impossible, within reasonable limits, to anticipate and set out all the consequences likely to result from granting the relief sought in these cases, and, in presenting the practical aspects of the

situation involved, we think we cannot do better than to avail our-
selves of a statement made in the very able brief of the attorney
general, from which we quote the following passage: "It appears
upon this record that the defendants * * * have exercised gov-
ernmental functions and franchises over the people of the said terri-
tory since 1892. This means: That four general elections have
been conducted in that time. Revenue by taxation has been raised.
Improvements have been made. Civil township, school district, and
county officers have been elected, and have exercised the usual func-
tions. That the state has accepted and received its share of taxes
levied and collected. School and county indebtedness have been
funded. Large amounts of delinquent taxes are unpaid. The state gov-
ernment, by its officers, has recognized the present conditions, and
continually acquiesced in them. Members of the state legislature
have been elected, and laws made affecting this territory. This
territory has been acting in all respects under the general laws of
the state, as parts of the counties from which they now seek to
segregate them. The congressional apportionment was made by the
last state legislature, for the next ten years, with these counties as
now organized taking part therein. Three senatorial elections have
occurred under existing conditions, with these counties taking part.
There has been continued acquiescence by the state and all the people
in all these acts, and the counties, as now organized, have participated
therein without any objection from any source whatever. * * *
These counties have been acting for ten years under the general laws
of the state, recognized by the courts to be constitutional and valid.
The operation of the laws there is as uniform, satisfactory, and
wholesome as in any county in the state. No complaints have come
from the people, showing that the present organization of these
counties works any hardship or oppression upon a single individual,
or that property interests and personal rights are not amply pro-
tected and safeguarded. In fact, a peaceful, contented, and prosper-
ous condition exists. No calamity is anticipated, and no hardship
or damages threaten the relators or any other person, on account
of the present boundaries of these counties. The relators do not
show one reason for bringing this action, other than the technical
one that the law fixing the present boundaries was unconstitutional;
and they do not claim any benefit will be derived from the proposed
change, except that the question as to the boundaries will be judicially
determined."

But regardless of consequences, serious of otherwise, the relators
insist that the counties of Pierce, McLean, and McHenry should, by
the judgment of this court, be compelled to withdraw from the terri-
tory over which they have exercised political franchises as counties
for the period of ten years. This drastic remedy is claimed by the
relators chiefly upon the ground that said act of 1891 is an unconsti-
tutional enactment, within the rule laid down by this court in the
case of *Richard* v. *Stark Co.*, 8 N. D. 392, 79 N. W. Rep. 863, in
which this court held that an act embraced in chapter 25 of the

Laws of 1895 is unconstitutional, because by its title it violated the provisions of section 61 of the state constitution. But it should be stated that the action of *Richard* v. *Stark Co.* was instituted within less than three years after the passage of the act of 1895, and that the same was a civil action commenced in the district court, and presumably with the consent of that court. The case reached this court regularly on appeal, and in this court, unlike the case at bar, the attorney general made no objections and urged no reasons against granting the relief demanded in the complaint. But in disposing of the cases under consideration, we shall assume that chapter 50 of the Laws of 1891 is unconstitutional for the reason stated in the Stark Co. Case, and this conclusion will serve to present the crucial point to be decided, viz., whether, under the political conditions presented in the information in the cases at bar, it would be a proper exercise of the discretion lodged in this court in this class of cases to grant the relief, and thereby precipitate the governmental chaos which would immediately and certainly result from such action. We have no doubt whatever that the remedy sought should be denied. If we were exercising the powers of a district court, we should certainly hesitate long before granting leave to any private relator to institute a civil action for the relief sought by these relators, especially if the attorney general of the state should oppose such application. For much stronger reasons, which need not be repeated, this court is in duty bound to deny the relief sought by a private relator, who, against the advice of the law officer of the state, demands that this court should put forth its prerogative authority upon the theory that the interests of the state at large demand that it should do so. In this class of cases the doctrine of estoppel has been successfully invoked as against a private relator, and even the state itself may be estopped by long acquiescence in and frequent recognition of corporate powers, which have been assumed without lawful authority. This sound and practical rule has the support of abundant authority, and the later cases are quite as emphatic as any upon this point. See *State* v. *City of Des Moines* (Iowa) 65 N. W. Rep. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381; *People* v. *Alturas Co.* (Idaho) 44 L. R. A. 122; *People* v. *Maynard,* 15 Mich. 463; *Jameson* v. *People,* 16 Ill. 257, 63 Am. Dec. 304; *State* v. *Leatherman,* 38 Ark. 81; *Rumsey* v. *People,* 19 N. Y. 41; High, Extr. Rem. § 686. These authorities are, in our judgment, strictly in point as against the contention of the relators' counsel. We shall not, however, discuss them in detail. The recent case of *State* v. *City of Des Moines, supra,* is a compend of authority upon the question, and goes to the full extent of holding that where a city, acting under color of an unconstitutional statute, had extended its corporate powers over adjoining territory, and, for a period of four years only, had continued to exercise corporate franchises within such territory, the court would, in the exercise of its discretion, refuse to interfere by quo warranto, and thereby disrupt political conditions existing within

the territory concerned.  After holding that the law under color of which the city had extended its boundaries was unconstitutional and void, the court concluded its opinion in language which applies with equal, if not greater, force to the facts of the cases under consideration: "Finally, it may be said that, aside from the necessity of maintaining the integrity of the constitution against infractions from legislative action, there is not a reason suggested for, or a benefit anticipated from, the judgment sought in this proceeding.  Such a judgment would disrupt the present peaceful and satisfactory arrangement of all the people of the city, as to its corporate existence, without a benefit, so far as we know, to any person.  The law does not demand such a sacrifice for merely technical reasons.  In fact, the constitutional vindication is complete with the declaration that the act is absolutely void.  The judgment of the district court is affirmed."

In the light of authority, we are justified in saying that it would, in our opinion, be an unsound exercise of judicial discretion to grant the relief sought by these proceedings, even if the applications were backed by the request of the attorney general of the state; and to grant the relief at the request of a private person, would, we think, involve a gross abuse of the powers of this court.  The rule of the authorities is expressed in High, Extr. Rem. § 605, as follows: "And the principle is now firmly established that the granting or withholding leave to file an information, at the instance of a private relator, to test the right to an office or franchise, rests in the sound discretion of the court to which the application is made."  The authorities cited below fully sustain the rule above quoted.  "The most important, if not the only, interest to be served, is that of the public.  If that is kept constantly in view, but little difficulty should be encountered.  *  *  * · The remedy is by no means a matter of absolute right on the part of the relator."  See Spell. Extr. Relief, § 1777; *People* v. *Waite,* 70 Ill. 25; *People* v. *Moore,* 73 Ill. 132; *People* v. *Keeling,* 4 Colo. 129; *State* v. *Fisher,* 28 Vt. 714; *State* v. *Smith,* 48 Vt. 266; *Com.* v. *Cluley,* 56 Pa. 270, 94 Am. Dec. 75.

We are clear that the relief sought should not be granted, and this court will enter an order denying leave to file the informations.  All the judges concurring.