(112 N. W. 52.)

---

STATE OF NORTH DAKOTA EX REL. A. W. MADDERSON, APPELLANT, v. ANDREW F. NOHLE, R. B. GORE, JOSEPH STEPHEN, ACTING AND BEING THE BOARD OF COUNTY COMMISSIONERS OF McKENZIE COUNTY, NORTH DAKOTA, RESPONDENTS.

Opinion filed June 14, 1907.

**Prerogative Writ — Quo Warranto — Relation of Private Person.**

1. Application is made to this court by a private relator for the issuance of a writ in the nature of quo warranto directing the defendants, who are acting as county officials of McKenzie county, to desist from exercising jurisdiction and authority over the territory included in such county, basing such application upon the ground of the unconstitutionality of chapter 73, p. 155, of the Laws of 1905. The application is resisted by the defendants and also by the Attorney General.

*Held,* following the rule announced in State v. McLean county, 11 N. D. 356, 92 N. W. 385, that such writs will only be issued by this court as prerogative writs, and will not be issued at the request of a private relator, except in very exceptional cases.

**Same — Writ Discretionary — Public Policy.**

2. *Held,* also, that the issuance of such writs by this court is wholly discretionary, and that applications therefore should be denied upon the grounds of public policy, where, as in this case, the issuance thereof would result in no perceivable benefit to the relator or to any other person, but would, on the other hand, result in great detriment to a large number of people, and would undoubtedly lead to much strfe, confusion and litigation.

Application by the state, on the relation of John Frish, for writ of quo warranto to A. F. Nohle and others.

Writ denied.

*Crawford & Burnett* and *Ball, Watson & Young, for relator.*

*T. F. McCue,* attorney general; *Robert Norheim, T. S. Becker* and *Geo. A. Bangs,* for respondents.

FISK, J.   This is an application for the issuance by the court of an original writ in the nature of quo warranto.

The application is made in the name of the state by one John Frish, a private person, as relator, and the object sought by such writ is to compel the defendants, who are acting as certain county officers of what is known as McKenzie county, to desist from exercising jurisdiction and authority as such county officials over the territory embraced within the limits of such county; relator's contention being that no such county legally exists, for the reason that the law under which the same was attempted to be organized, being chapter 73, p. 155, of the Laws of 1905, is unconstitutional and void, as being in violation of section 167 of the Constitution, which, it is claimed, prohibits special legislation upon the subject of the organization of counties.   Upon the presentation and filing of the application, an order was made and served upon defendants requiring them to show cause before this court why such writ should not be issued as prayed for.   Pursuant to such order to show cause, the defendants, through their counsel, have appeared and resist the issuance of such writ, both upon the ground that the relator has no right to institute the proceedings and also upon the merits.   The facts as stipulated are briefly as follows:  The defendants, Nohle, Bangs and Shaw, were in the month of April, 1906, appointed county commissioners in and for McKenzie county by the governor, and the defendants, Dimmick and Millhouse, were at said time appointed by the governor to the offices of treasurer and auditor, respectively, and that all such persons thereupon assumed the duties of their respective offices and acted as such officers until January 7, 1907; that all of said officers except the defendant Shaw, who was succeeded by one R. B. Gore, were, at the general election held in November, 1906, in said county, elected to the respective offices to which they had been theretofore appointed, and they each duly qualified and entered upon the discharge of their duties on January 7, 1907, since which time they have been the qualified and acting officers aforesaid.   Said officers have performed all the duties usually performed by such county officers, and that during the year 1906 taxes were assessed, levied, and collected in said county and the portion thereof belonging to the

state has been turned over by the treasurer of said county to the state in the same manner as taxes are collected and turned over by regularly organized counties; that since the organization of such county roads have been established, indebtedness created, and county warrants issued; that there is now outstanding approximately $5,000 of such warrants, which are held by divers persons who have taken them in the ordinary course of business; that upon the passage and approval of chapter 73, p. 155, of the Laws of 1905, the governor established a temporary county seat for said county at Alexander, where all county business has been transacted as in other regularly organized counties; that in May, 1906, an action was instituted in the district court of Stark county by one J. Granteer on behalf of himself and several others, challenging the validity of the organization of such county, and in the month of November, 1906, an action was instituted in the federal court, Southeastern division, by the Northern Pacific Railway company for the same purpose, which actions are still pending and undetermined; that the relator, Frish, is a resident and property owner in said territory.

We are clearly of the opinion that the application should be denied. By granting the same we would recognize the right of a mere private relator to invoke the original jurisdiction of this court in a matter in which he shows no greater interest than that of any other resident and property owner of the county, and this, without first invoking the jurisdiction of the district court, properly having jurisdiction in such cases. It has repeatedly been held by this court that the writ here prayed for is strictly a prerogative writ, and that the same will be issued only in exceptional cases. State v. McLean County, 11 N. D. 356, 92 N. W. 385, and cases cited. In that case this court quoted approvingly from the opinion of the Supreme Court of Utah, in State v. Elliott, 44 Pac. 248, 13 Utah 200, as follows: "It will be noticed that there are five writs of which the Supreme Court has original jurisdiction, and very probably many controversies will arise for which one or the other of these writs will afford a proper remedy. Hence, if we were to assume jurisdiction of every such controversy which might be brought before us, regardless of whether the state had a special interest therein, or whether it presented any special exigency, it can readily be perceived that most of our time would be consumed in hearing and determining cases which could more speedily and conveniently be heard and determined in an inferior court. This would seriously impair the usefulness of

this tribunal as an appellate court, and yet its appellate power was the main object of its creation. No construction which would render such a result possible is warranted by the provisions of the constitution relating to the judicial department. From the general policy indicated, and the language used, it is manifest that this tribunal was intended by the framers of the constitution to be essentially a court of appeals; and therefore we will not assume jurisdiction, under the grant contained in section 4 at the relation of private parties, except in cases which present some special reason or some special or peculiar emergency, or where the interests of the state at large are shown to be such as to render it apparent that the interests of justice require its exercise. The remedy provided by the constitution, authorizing proceedings in inferior tribunals, must in all cases be followed, unless it shall be made to appear to the satisfaction of this court that there is an urgent necessity for the interposition of its power, where, as in this case, the appellate court of the state and inferior courts of general common-law powers are vested with jurisdiction in quo warranto, the appellate court may properly refuse to assume original jurisdiction in matters where the inferior courts have ample power and can by entertaining the information, afford adequate relief; and the right of the appellate court to exercise its discretion in granting or withholding leave to file an information in the nature of quo warranto is not limited. Nor is the discretionary power of the court exhausted until it has permitted the information to be filed." The rule thus adopted by this court is clearly sound, and will be strictly adhered to by us as a settled rule of practice in disposing of applications such as the one now under consideration. The fact that the attorney general indorsed upon the moving papers his consent to the exercise of such jurisdiction by this court will not operate to change the above rule. The very able and exhaustive opinion of Mr. Chief Justice Wallin in State v. McLean County, supra, is to our minds, a conclusive answer to the arguments of relator's counsel, not only upon the practice question here involved, but upon the merits as well. In the opinion in that case, after referring to the facts, it is, among other things, said: "Upon the considerations already stated, we are in our judgment justified in refusing to assume original jurisdiction in these cases. But there is another factor of prime importance, and one relating to the merits of the application, which, in our opinion, leads to the same conclusion. In these cases the remedy of quo warranto is not sought as a means of exercising superintending control of an inferior

court, or in aid of the appellate jurisdiction of this court. On the contrary, the relator is before this court with the avowed purpose of invoking its original powers. In such cases it has been repeatedly held the enumerated writs are not writs of right, but are strictly prerogative writs, and the same will issue only in cases publici juris, where the sovereignty of the state, or its franchises and prerogatives, or the liberties of its people, are directly, and not remotely, involved.     *    *    *    Ordinarily a private person, who volunteers as a champion of only public rights, and as such invokes the prerogative writs, will be regarded as an intermeddler. It appears by the information, and more fully by the briefs of counsel on behalf of the relator, that the relator has suffered no wrongs peculiar to himself, but on the contrary, the relator appears in this court solely as a champion of the state, and for the ostensible purpose of protecting governmental franchises from abuse.    *    *    *    Before assuming jurisdiction of these cases, it is, in the opinion of this court, very important to consider the consequences which will necessarily ensue if the relief asked by the relators is granted by this court; and this more especially in view of the entire want of power in this court either to rehabilitate the political machinery sought to be destroyed, or to create a new governmental status within the extensive regions which would be affected if the relief asked were granted." The foregoing opinion is as applicable to the facts of this case as to those in the case then under consideration, and we unhesitatingly give our assent to all that was there held. The fact that the relator in the case at bar made his application for the writ within two years from the date of the passage of the act in question does not, in our opinion, under the facts, exonerate him from the charge of laches. Relator does not attempt to excuse the delay of nearly two years in making his application. The stipulated facts do not show that he was a party to the other proceedings instituted for the purpose of adjudicating the question as to the validity of such county organization nor that he had knowledge of such proceedings.

In applying the doctrine of laches or the rule of estoppel by acquiescence, no fixed time will be taken as controlling, but the facts in each particular case must govern the court's decision, and where, as in this case, although but about two years have elapsed since the county was organized, grave consequences would inevitably follow to a large number of people as a result of relator's successful prosecution of the proceedings, and no perceivable benefit to any person

would be obtained thereby, this court is justified, if not required, by the plainest principles of jurisprudence to deny the relief prayed for by exercising its undoubted discretion to refuse the writ. A circumstance of no little weight is the fact that the attorney general is not before the court asking that the writ be granted but he has appeared in behalf of defendants and vigorously resists relator's application. Conceding the unconstitutionality of the law in question, as was done in State v. McLean County, supra, we hold, as we held in that case, that it would be a gross abuse of the discretion lodged in this court in such cases to grant the relief prayed for, "and thereby precipitate the governmental chaos which would immediately and certainly result from such action." The Supreme Court of Illinois in McCormick v. Kreinke, 179 Ill. at page 308, 53 N. E. 549, in disposing of a similar question in which relator had waited three years before making application, held to the same effect. To grant the relief which relator asks would, in our opinion, unnecessarily open up an indefinite field of strife, confusion, and litigation without any corresponding benefits to relator or any other person, and as was said in State v. Des Moines, 65 N. W. 818, 96 Iowa 521, 31 L. R. A. 186, 59 Am. St. Rep. 381, "the law does not demand such a sacrifice for merely technical reasons." It follows that the application should be denied, and it is so ordered.

MORGAN, C. J., concurs.

SPALDING, J. I concur in that part of the foregoing opinion, holding that the record does not disclose such exceptional facts as to warrant this court in issuing the writ requested on the relation of a private relator, but am of the opinion that a case showing most extraordinary circumstances should be presented to justify a court in holding that a statute conceded to be invalid can in effect be validated by the laches of either the sparse population of a large territory, or state officials who have no constitutional authority to bind either the state or the county in such a matter. The fact that three or four months after the only election held in a county organized under an unconstitutional statute before a proceeding to determine its status was commenced does not, in my opinion, justify a finding of such laches as are necessary to put life into a statute void ab initio.

In my opinion the facts in this case are entirely inadequate to make the doctrine of State v. McLean County, 11 N. D. 356, 92 N. W. 385, applicable.