State of North Dakota ex rel. Henry Erickson v. A. G. Burr.

Opinion filed Nov. 6, 1907.

**Statutes — Constitutional Law — Title of Acts — Judicial Districts.**

1. The title to chapter 161, p. 255, Laws 1907, being an act "defining the boundaries of the Second, Eighth and Ninth judicial districts of the state of North Dakota and providing for terms of court in said district," does not contravene the provisions of section 61, art. 2, of the constitution, requiring that the subject of the act shall be expressed in the title, although the act provides that the judge for the Ninth district shall be elected at the general election of 1908, and that until such election the territory comprising said district shall be and remain a part of the judicial district to which it belongs under existing laws.

**Supreme Court — Original Jurisdiction — Consent of Attorney General — Private Relator.**

2. Where the governor of the state appoints a judge of the district court under a law providing that the office shall be filled by a general election, and a private relator applies for leave to file an application for a writ in the nature of a writ of quo warranto, on the ground that he has suits pending of strictly personal nature, and that the public are interested and that the sovereignty of the state is affected, this court will assume original jurisdiction under section 87, art. 4, of the constitution, although the attorney general refuses to consent that said private relator may apply for leave to file the application for such writ in the name of the state.

**Statutory Construction.**

3. In construing statutes, the great aim of courts should be to give effect to the intent of the legislature in the enactment of each provision of the law.

**Same — Contradictory Provisions.**

4. In ascertaining what the legislative intent is, inharmonious and contradictory sections should be harmonized and made effectual if it can be done under reasonable rules of construction, and no section or utterance should be nullified if it can be given effect by such rules.

**Same — Resort to Legislative Journals.**

5. In determining what the legislative intent was in passing a law that is ambiguous in its terms, the journals of the legislature may be read in order to correctly ascertain such intention.

**Same.**

6. In determining what the legislative intention was in passing a law whose provisions are contradictory on its face, the fact that the journal shows that a positive provision, contradictory of a provision

stricken out, was inserted in the act by an amendment adopted as the last act before it was passed by one body, will be accepted as controlling of the intent, and the seemingly contradictory provisions left in the act will be disregarded and deemed to be in the law through inadvertence.

Application by the state, on the relation of Henry Erickson, for a writ of quo warranto against A. G. Burr.

Writ granted.

*Edward Engerud* and *A. M. Christianson,* for plaintiff.
*Scott Rex, A. E. Coger* and *Purcell & Divet,* for defendant.

MORGAN, C. J.   This is an application by a private relator for leave to file an information in the nature of quo warranto against the respondent, A. G. Burr, who is charged with unlawfully acting as judge of the district court of the Eighth judicial district. An order to show cause was issued by this court on August 10, 1907, why such leave should not be granted, and on the return day thereof the relator and the defendant appeared and arguments were duly presented in favor of the right, necessity, and duty of this court to grant such leave and in opposition thereto.

The facts leading up to the application are as follows:   On March 23, 1907, chapter 161 (page 255) of the Laws of 1907 was duly approved by the governor, which was an act passed with an emergency clause defining the boundaries of the Ninth judicial district.   On July 2, 1907, the governor of the state appointed the respondent judge of the district court of said district, who took the oath of office and entered upon the discharge of the duties of the office at once.   On behalf of the relator, it is contended that the appointment was in contravention of the provisions of said law, and consequently illegal, null, and void.   The respondent claims that his appointment was pursuant to such law, and therefore valid.   In order to properly dispose of these contentions, it will be necessary to state the provisions of the law under which said appointment was made.   Section 1 enumerates the counties of which each of said districts shall be composed, and prescribes that the Ninth district shall consist of the counties of Bottineau, McHenry and Pierce.   Section 2 is as follows: "All actions brought and now pending in the counties of Bottineau, McHenry and Pierce shall be continued in and tried in the Ninth judicial district.   The court on its own motion shall direct and authorize said actions

to be entitled in the Ninth judicial district, and any judgments rendered thereon shall be in full force and effect in said district." Section 3 provides for the holding of terms of the district court in each of said districts; and further provides as follows: "Any terms of court now called by the presiding judges of the Second and Eighth judicial district shall be duly held unless continued by the judge of the Ninth judicial district for cause." Section 4 is as follows: "There shall be chosen a judge of the district court for the Ninth judicial district at the general election to be held in November, 1908, and thereafter as provided by law." Section 5: "Until the election and qualification of the judge of the Ninth judicial district as herein provided for, all of the territory comprehended in said Ninth judicial district shall be and remain a part of the judicial district to which it belongs under existing laws." Section 6 repeals all acts or parts of acts in conflict with the act in question. Section 7 is as follows: "An emergency exists in this that the population and judicial business in the Second and Eighth judicial districts of the state have grown so large that the judges of said districts cannot give proper attention thereto, therefore this act shall take effect from and after its passage and approval." On March 23, 1907, chapter 159 (page 254) of the Laws of 1907 was approved by the governor of the state. This law was an amendment of section 468 of the Revised Codes of 1905, and provided that the state shall be divided into ten judicial districts, and that terms of court should be held in each district as provided by law, and that a judge of the district court shall be elected in each of said districts, whose term of office shall be four years from the first Monday in January next succeeding his election and until his successor is elected and qualified. No emergency clause was enacted with this act. Hence it did not go into effect until July 1st following its approval.

The respondent contends: (1) That this court should not take jurisdiction and grant the writ, for the reason that the facts do not bring it within the contemplation of section 87, article 4, of the constitution; (2) that sections 4 and 5 of the law under which the appointment was made are unconstitutional, for the reason that the subject of their provisions are not expressed in the title of the act; (3) that said law remains a complete and valid law without sections 4 and 5, and is authority for the immediate appointment of a judge for the district; (4) that it was the intent of the legis-

lative assembly that a judge should be appointed on July 1st, even if sections 4 and 5 be not unconstitutional. To these questions we will now endeavor to apply legal principles for their correct interpretation, mindful of the grave, important, and far-reaching results of our decision.

At the hearing the jurisdiction of this court to entertain original jurisdiction of this proceeding was not seriously denied, but in a wrtten brief subsequently filed it is ably contended that leave to apply for a quo warranto writ should be denied, for the reason that the facts do not bring the application within the purview of section 87, article 4, of the constitution. That section is as follows: "It [Supreme Court] shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction and such other original and remedial writs as may be necessary to the proper exercise of its jurisdiction, and shall have authority to hear and determine the same." If the attorney general, ex officio, had consented that this relator might apply for this writ, no serious question could be raised in opposition to granting such private relator leave to institute the proceedings. The attorney general having refused to give his consent to the application on behalf of a private relator, a different question is presented, that has not hitherto been presented to this court under parallel facts. The relator bases his right to file an information in the nature of quo warranto upon facts stated in his preliminary affidavit, substantially as follows: That he is a party to several actions now pending in the courts of Pierce nd McHenry counties, and is a resident and large taxpayer of McHenry county, and that the respondent as judge threatens to assume jurisdiction on the trial of said causes, and that his acts in relation to said causes will be null and void, and will result in damage to him and multiplicity of suits, and that the sovereignty of the state is affected. The fact that the attorney general refuses to apply for the writ may have great weight with the Supreme Court in determining whether it will assume jurisdiction; but the fact of such refusal of itself will not be given controlling effect when considered in connection with the facts on which the application is based. The writ may be granted when he refuses to apply. It is ultimately for the court to determine whether jurisdiction should be assumed. The recommendation or action of the attorney general, who is the representative of the state in all matters of a legal nature, should always be given grave con-

sideration, but his action will not alone be the guide whether the court should exercise its jurisdiction. The writ is not demandable as a matter of right in any case by a private relator, but is issued as a matter of discretion, after weighing all the facts together with the attitude of the attorney general in reference to the particular case under consideration. The general rule is that this court will take jurisdiction in matters of great public concern—matters affecting the sovereignty of the state. "The Supreme Court shall have and exercise appellate jurisdiction only, except when otherwise specially provided by law or the constitution. The Supreme Court has power in the exercise of its original jurisdiction to issue writs of habeas corpus, mandamus, quo warranto, certiorari and injunction. * * * Provided that said court shall exercise the said original jurisdiction only in habeas corpus cases and in such cases of strictly public concern as involve questions affecting the sovereign rights of the state or its franchises or privileges." Section 6751, Rev. Codes 1905.

In State v. Nelson County, 1 N. D. 88, 45 N. W. 33, 8 L. R. A. 283, 26 Am. St. Rep. 609, this court said: "When the information makes out a prima facie case, the writ will issue only in cases of publici juris, and those affecting the sovereignty of the state, its franchises and prerogatives, or the liberties of the people. In such cases the court will judge for itself whether the wrong complained of is one which demands the interposition of this court." In State v. Archibald, 5 N. D. 359, 66 N. W. 234, this court approved of the following rule: "But it would be straining and distorting the notion of prerogative jurisdiction to apply it to every case of personal, corporate or local right where a prerogative writ happens to afford an appropriate remedy. To warrant the assertion of original jurisdiction here, the interest of the state should be primary and proximate, not indirect or remote, peculiar, perhaps, to some subdivision of the state, but affecting the state at large in some of its prerogatives, raising a contingency requiring the interposition of this court to preserve the prerogatives and franchises of the state in its sovereign character, this court judging of the contingency in each case for itself." In that case this court further said: "The fact that the attorney general has declined in this proceeding to represent the relator to appear for the board or state is not decisive against our jurisdiction." In State v. McLean County, 11 N. D. 356, 92 N. W. 385, this court

said: "From the general policy indicated and the language used, it is manifest that this tribunal was intended by the framers of the constitution to be essentially a court of appeals; and therefore we will not assume jurisdiction under the grant contained in section 4, at the relation of private parties, except in cases which present some special reason or some special or peculiar emergency, or where the interests of the state at large are shown to be such that the interests of justice require its exercise." In State ex rel. Byrne v. Wilcox, 11 N. D. 335, 91 N. W. 958, this court said: "This raises the question whether such writs can lawfully issue out of this court in any case against the advice of the attorney general. To this question we are constrained to give an affirmative answer. This court reserves the right to exercise judicial discretion in all cases where prerogative writs are asked for, and will issue and refuse to issue writs at its official discretion and according to the exigency of cases. Cases may possibly arise when this court for the protection of grave public interests may deem it to be its duty to override the express wishes of the attorney general with respect to assuming original jurisdiction.

The action of the attorney general in declining to appear on behalf of the state is not of itself sufficient reason for refusing the application of the writ on the request of a private relator, if the facts are such as to materially affect the sovereignty of the state. What are matters of public concern affecting the sovereign rights of the state is not a matter capable of exact definition. Each case must be governed by its own facts. In the case at bar, the question involves the construction of a law to determine whether the governor shall appoint, or the people elect, a judicial officer provided for by the state constitution. It involves the question whether a law of a public nature and necessarily affecting the state at large is properly construed as contemplating immediate action by the governor in making an appointment or a delay in filling the office until an election is held. If no immediate appointment is provided for, then the question is presented whether the defendant should be permitted to act under an illegal appointment under which the validity of his official acts is a matter of serious doubt. Irrespective of the matters of sole and personal interest to the relator, we have no hesitation in saying that a private relator's appeal for our assuming jurisdiction should be granted. The public is interested, and it is a matter of great public

concern that the laws shall be interpreted by courts constituted as provided by the laws, and not otherwise.

As we deem it our duty to assume jurisdiction, it becomes necessary to determine what was the intention of the legislature in respect to the filling of the office in question, and, as preliminary to that question, we must determine whether sections 4 and 5 of the act were constitutionally enacted and are a part thereof. The contention of the respondent is that said sections are foreign to the title of the act. As heretofore shown, the title of the act makes no express reference to the manner of filling of the office of judge of the Ninth district, nor of any of the districts to which the act relates. It is claimed that the constitutional provision requiring the title of every act to express the subject thereof has been violated. Section 61, article 2, of the constitution, which contains this requirement, has often been construed by this court. Prior adjudications as to the application of this constitutional requirement have resulted in establishing several fixed principles of construction of a general nature, among them the following: The title should be liberally, and not technically, construed. The construction should be reasonable. Conflict with the constitutional provision must appear clear and palpable, and, in case of doubt as to whether the subject is expressed in the title, the law will be upheld. Titles should be construed in connection with the law with the view of remedying the evil intended to be obviated by the constitution makers—that of preventing fraud or surprise upon the members of the legislature and the people by introducing provisions into the law independent of or foreign to the subject expressed in the title. If the subjects in the law are germane or reasonably connected with the subject expressed in the title, the constitutional requirement is sufficiently met. The provision is mandatory on the courts and on the legislature. See Powers Elevator Co. v. Potter (decided recently) 113 N. W. 703; State v. Woodmansee, 1 N. D. 246, 46 N. W. 970, 11 L. R. A. 420; State v. Nomland, 3 N. D. 427, 57 N. W. 85, 44 Am. St. Rep. 572; Richard v. Stark County, 8 N. D. 392, 79 N. W. 863; State v. Home Society, 10 N. D. 493, 88 N. W. 273. With these principles of construction as established in the prior decisions of this court, we will consider whether the provision of the law that the first incumbent of the office is to be elected by popular will is expressed in the title as contemplated by said section 61, article 2, of the constitution. The title of the

act is as follows: "An act defining the boundaries of the Second, Eighth and Ninth judicial districts of the state of North Dakota, and providing for terms of court in said districts." The general subject of this act plainly is the boundaries of the Second, Eighth and Ninth judicial districts, and connected therewith the matter of terms of court therein. What territory those districts shall contain is not expressed in the title, and need not be, as the words "defining the boundaries" necessarily indicate that the body of the act will determine that question. Nor does the title express when those districts shall become operative as separate judicial districts in the full sense of having a presiding judge for the Ninth judicial district, nor how the judge of that district shall be chosen to the office, nor when such choice shall become effectual. We are convinced beyond any doubt, however, that the specification of these matters in the title is wholly unnecessary, and their absence from the title in no way nullifies any provisions of the law. The title of the act expresses the fact that the boundaries of a new judicial district are defined by the act. Under former laws, there was no Ninth judicial district, and the title of this act plainly specifies that a new district is to be defined. What counties shall comprise this district are subjects for the body of the act. When the law shall become effective is related to the subject, judicial districts, expressed in the title. It is always within the province of the legislature to declare in the body of the law when it shall go into effect, although the title may be silent on that subject. Wright v. Cunningham, 115 Tenn. 445, 91 S. W. 293. This is a matter which one may reasonably and naturally expect to find in the body of the act. The title having expressed the facts that the law is to relate to the boundaries of the Ninth district and terms of court therein, a person reading it would naturally know therefrom that the facts relating to the counties comprising the district, the appointment or election of a judge, and when the law is to become operative would be provided for by the act. When the district is to be fully operative by the appointment or election of a judge is a matter incidental to and closely connected with the defining of the boundaries thereof and fixing the terms of court therein. When the title apprises a person that the boundaries of a new district are defined, he would naturally be apprised that the act provides how and when the first incumbent is to be chosen, and when the act becomes operative. Those matters are germane to the

matters of the boundaries of the district and holding terms of court therein. The matter of filling the office of judge of the new district is closely connected with the subject expressed in the title, and is not foreign thereto, and is not an independent subject, and the act is not broader than the title. The appointment or election of a judge refers to the method of filling the office of judge for the new district of which the boundaries are defined, and is therefore the means or instrumentality of carrying into effect the subjects named in the title. It is not essential that the title shall be an index to the act, nor that all the details of the act be therein enumerated. See cases cited above (26 Am. & Eng. Enc. Law, 588; Aikman v. Edwards, 55 Kan. 751, 42 Pac. 366, 30 L. R. A. 149), where it held that a title similar to the one under consideration was held sufficiently comprehensive to sustain a provision in the act abolishing a judicial district, and thereby legislating the judge thereof out of office.

In Commissioners v. Bailey, 13 Kan. 600, an act was sustained as constitutional which abolished a certain county, although the title only referred generally to "defining the boundaries of counties." In Re Board of Commissioners, 4 Wyo. 133, 32 Pac. 850, an act with a title like the one in this case was sustained, and the court said: "The unit, the subject-matter of the legislation comprehended in the act, is the defining of the four judicial districts, and this defining might reasonably include the name, number, and territorial extent and operation of the courts of such judicial district, as they are subordinate, incident and germane to the main and general subject of the act. It would be absurd to say that, in dealing with the reorganization of the judicial districts of the state, the legislature would be compelled to enact one statute creating a new district, another for the appointment or election of a judge, and another for the terms of court in the several counties in each district. All these subjects may well be grouped under the general topic or subject of legislation in one bill with a comprehensive title. The different entireties of such legislation are inharmonious or incongruous. No one would be misled by such a bill while in the course of legislative gestation or by such an act on the statute books. * * * The provisions for the Fourth district and a fourth judge are all matters immediately and intimately connected with and incident to the division of the state into judicial districts." In Diana Shooting Club v. Lemoreux,

114 Wis. 44, 89 N. W. 880, 91 Am. St. Rep. 898, a private law having a title, "An Act to incorporate the Mechanic's Union Mfg. Co.," was sustained as not violative of the constitutional provision like our own, although the act provided for the appointment of commissioners to appraise state land and withdrawing such land from market, and the corporation was given the exclusive right to purchase said lands at the appraised value.    In that case the court said:   "When one reading a bill with the full scope of the title thereof in mind comes upon provisions which he could not reasonably have anticipated because of their being in no way suggested by the title in any reasonable view of it, they are not constitutionally covered thereby.   But in applying that rule this other rule, which has been universally adopted, must be kept in mind: The statement of the subject includes, by reasonable inference, all those things which will or may facilitate the accomplishment thereof."   See, also, People ex rel. Brockport v. Sutphin, 166 N. Y. 163, 59 N. E. 770; Hope v. Gainesville, 72 Ga. 246; Sutherland on Stat. Cons., section 129.   It is claimed that a provision for the election of a judge in a new district is an innovation upon prior legislation on that subject in this state, as the governor has hitherto been author-, ized to appoint the first incumbent to the office where new districts have been created.   From this it is argued that a person would naturally conclude from the title to this act that an appointment by the governor would necessarily follow.   No such conclusion would be justified.   It is not contended, and could not be properly contended, that the legislature may not constitutionally provide for an election in place of an appointment by the governor.   Hence a person reading this title would necessarily have it suggested to him that it was within the discretion of the legislature to declare whether the new judge was to be appointed or elected, and would naturally look to the law for an answer to the suggestion.

The respondent insists that it was the intent of the legislature that the act should go into effect in July, so far as the creation of the district and filling the office by appointment are concerned, notwithstanding that sections 4 and 5 of the act be declared constitutionally enacted.   This presents a question of statutory construction, on which depends the right of the respondent to continue in office.   The various sections of the act, when read without resort to extrinsic matters as aids to construction, seem to be in irreconcilable conflict.   The provisions of section 2, read in con-

nection with the emergency clause, seem to indicate an intent that
the act should go into immediate operation. Sections 4 and 5
by themselves show a positive intent that it shall not go into effect
immediately. What was the legislative intent is the test by which
the difficulty is to be resolved. · As aids in determining this in-
tent in cases where the language used is contradictory or ambigu-
ous, the conditions existing at the time of the passage of the law,
the object to be gained by its enactment, the evils to be remedied,
the record of its passage as shown by the legislative journals,
and any other matters contemporaneous with its enactment that
will throw light upon that question are to be considered in connec-
tion with the conflicting clauses on the face of the act in judging
what the legislative intent was. Sutherland on Stat. Cons. says,
in section 263 (2d Ed.) : "If a statute is valid, it is to have effect
according to the purposes and intent of the lawmaker. The intent
is the vital part, the essence of the law, and the primary rule
of construction is to ascertain, and give effect to that intent.
*   *   *   The sole authority of the legislature to make laws is
the foundation of the principle that courts of justice are bound to
give effect to its intention. When that is plain and palpable, they
must follow it implicitly. The rules of construction with which
the books abound apply only where the words used are of doubt-
ful import. They are only so many lights to assist the court in
arriving with more accuracy at the true interpretation of the in-
tention." From the act alone it would be practically an arbitrary
conclusion to say what was the intent of the legislature as to
whether a district was to be created and a judge appointed imme-
diately, or whether all was to be in abeyance until after the election
of 1908. There is no reasonable and satisfactory construction
that will harmonize the conflict between the several sections. By
referring to the legislative journals, however, the intent of the
legislature becomes plain and pronounced. Our statute provides
that we may take judicial notice of the journals of each branch
of the legislature and of the history of every statute in its progress
through the legislature, and of such contemporaneous history as
led up to and probably induced the passage of the law. Subdi-
visions 57-61, section 7319, Rev. Codes 1905.. Without any statute
on the subject, courts may look into legislative proceedings to
determine what construction should be given to a law. Edger v.
Randolph Co., 70 Ind. 331, and cases cited.

Looking to the journals of the senate, we find that the law under consideration was introduced in the senate as Senate Bill No. 58. As introduced in the senate and as it was read the first and second times, section 4 was as follows: "Sec. 4. Appointment of judge. The governor of this state shall appoint a judge of the district court for the Ninth judicial district of this state, who shall hold office until the next general election, and until his successor is duly elected and qualified, and until the judge of the Ninth judicial district be appointed and qualified, the judge of the Second judicial district shall continue to act as the judge of the district court in and for Pierce county, and the judge of the Eighth judicial district shall continue to act as judge of the district court in and for the counties of Bottineau and McHenry." As originally introduced, the emergency clause was a part of the act the same as it now appears in the act. When the bill was under consideration upon its final passage in the senate, the act was amended by entirely striking out section 4 as it was when introduced, and inserting in lieu thereof the section 4 of the act as it now appears. Section 5 of the act as originally introduced was amended so as to read as section 5 now does, and section 5 of the original act was made to read as section 6 now does. As amended in these particulars, the bill passed the senate, and, after having once failed to pass in the house, was reconsidered, passed unchanged, and sent back to the senate. From the proceedings in the senate when section 4 was stricken out and a provision for the election of the first incumbent to the office at the next general election inserted, it becomes apparent that it was the will of the senate that the office should be filled by election, and not by appointment. This was a positive, unequivocal expression of what was the intent of the senate on that question when that question alone was under consideration, and must govern notwithstanding seeming contradictory provisions that remained in the bill, undoubtedly through inadvertence. The force of this amendment of section 4 shuts out all room for doubt as to whether the office was to be filled by election by the people, or by appointment, and forecloses any necessity of attempting to reconcile the inharmonious sections by giving to the words "election" and "chosen" synonymous meaning. The controlling effect of sections adopted as parts of laws by amendment has often been recognized and given full effect in cases where the amendment did not signify a specific intent in so pronounced

a manner as the one under consideration. In Arnett v. State ex rel. Donahue (Ind. Sup.) 80 N. E. 153, 8 L. R. A. (N. S.) 1192, the court said: "It is easy to understand how in the hurry of legislation there may be a failure, in connection with the adoption of an amendment, carefully to eliminate provisions which are really intended to be superseded; but it would discredit the intelligence of the lawmaking power to indulge the supposition that in the adoption of an amendment, containing such a definite statement of what was intended as is found in the amendment in question, the general assembly failed to appreciate the force of such words." In Small v. Small, 129 Pa. 366, 18 Atl. 497, the court said: "In truth, the real explanation of both phrases, entirely unsuitable as they stand, is the failure to notice the effect of striking out the words 'including each other,' contained in the act as originally introduced. With these words left in, the absurdity as to suits by the husband disappears, and the phrase 'separate property,' though not elegant as to legal style, is clear and definite in its meaning." In Edger v. Randolph Co., supra, the court said: "It has never been held by this court that, for the purpose of construction or interpretation and with a view of ascertaining the legislative will and intention in the enactment of the law, the courts may not properly resort to the journals of the two legislative bodies to learn therefrom the history of the law in question from its first introduction as a bill until its final passage and approval. When, as in this case, a statute has been enacted which is susceptible of several widely different constructions, we know of no better means for ascertaining the will and intention of the legislature than that which is afforded in this case by the history of the statute as found in the journals of the two legislative bodies." See, also, section 470, Sutherland on Stat. Cons. (2d Ed.)

It is urgently contended that the recitals of the law conclusively show that it was the conclusion of the legislature that the rights of litigants in the territory affected were so seriously obstructed on account of overcrowded calendars consequent upon the inability of two judges to do the work, and that the provisions of sections 4 and 5 as amended should not have controlling effect, but should be nullified in view of the intent of the legislature, expressed in the emergency clause, to relieve the litigants in this territory from this embarrassment and injury. In our view no such deduction can be legally or reasonably made from the passage of

the law. We concede that a law will be liberally construed to cure the evil intended to be cured, if it can be done without violating settled rules of construction. It was solely for the legislature to say when another judge became a necessity. By striking out section 4 the legislature must be deemed to have intended that the law should not go into effect in July, and should not go into effect by appointment of a judge, but by election in November, 1908. It is not for us to say what was the motive of the legislature. We are concerned only with the question whether it acted within its powers. From the language used and the manner of amending section 4, we are forced to presume that it concluded finally that there was no necessity for another judge until he was elected in 1908, although from the general language of the emergency clause it appears that business in these counties was crowded. The effect of the language of the emergency clause must yield to the specific language of section 4 in view of the manner in which it was adopted. It is stated that chapter 159, page 254, Laws 1907, which divided the state into ten judicial districts, created the Ninth judicial district, and that this is a conclusive legislative declaration that the Ninth district must be considered as in existence from the day of the approval of the act. No such conclusion necessarily follows. Whether it was necessary to pass this act we need not determine; but it did not fully provide for the creation of a new district. The boundaries were not defined. Chapter 159, page 254, and chapter 161, page 255, were passed on the same day, and were approved on the same day, and are clearly in pari materia. The creation and existence of the Ninth district, therefore, depends on the effect of the passage of chapter 161. As seen, our construction of the latter law is that the Ninth district was not created absolutely in the sense that a judge was to be appointed or elected thereto immediately. The coming into existence of this district as an entirety was to be held in abeyance until after the election of 1908. The territory comprised therein remained a part of the old districts, and the judges thereof could lawfully act therein the same as they had done previously. In our opinion no part of this law come into operation on its approval, but was to become so later under its express terms.

For these reasons, we conclude that the writ applied for should issue; and it is so ordered. All concur.