## BUFFALO SUPERIOR COURT.

JANE F. DIBBLE agt. ALMON M. CLAPP and others.

The courts of this state have *no jurisdiction* over lands in this state purchased by the United States with the consent of and ceded by the state, for the erection of post-offices, custom houses, court rooms, forts, magazines, arsenals, dock yards and other needful buildings.

*Congress* is vested with the same exclusive jurisdiction over such places as it possesses over the District of Columbia, and the same results follow. Consequently the inhabitants of such places, *actually dwelling therein,* are not entitled to the exercise of the elective franchise at state elections, nor to the other political privileges exclusively belonging to the citizens of the state.

Nor have the courts of this state jurisdiction of an action of *ejectment* to recover *dower* in such lands, where the land was purchased by the United States from the husband of the claimant, and ceded by the state, while he was living, and the right of dower of the wife was *inchoate.*

*It seems,* that the act of the legislature of this state, giving the consent and ceding the lands to the United States, after such purchase, vested the fee of the *whole premises* in the United States, free from any claim of dower.

*Buffalo Special Term July,* 1866.

THIS is ejectment under the statute of this state for dower in certain lands, situate in the city of Buffalo, upon which stands the large and substantial stone building erected and used by the United States government for a post-office, custom house, court rooms, &c. The defendant Clapp is deputy postmaster, and has the charge of that part of the building used as a post-office. The defendant Norton is collector of customs, and has charge of that part of the building used as a custom house. The defendant Hall is U. S. district judge, and holds courts in the rooms set apart in the building for that pur-

pose. The other defendants are U. S. deputy marshals, and occupy offices in said building appropriated to that use.

The United States in 1855 became, by purchase, seized in fee of the lands in question. They were purchased by the United States for the purposes for which they are now used. At the time of the purchase of the lands by the United States, the plaintiff had an inchoate right or possibility of dower in them. Her husband was then living; he died in the fall of 1864.

The state of New York gave its consent to the purchase of the lands by the United States for the purposes before mentioned, and ceded its jurisdiction in and over the said lands when purchased by the United States, to the United States, reserving the right to execute the process of the state upon said lands, except when such process might affect the real or personal property of the United States. (*Laws of 1854, chap 1*; *Laws of 1855, chap. 399.*)

B. H. AUSTIN, *for plaintiff.*
J. L. TALCOTT *aud* R. L. BURROWS, *for defendants.*

MASTEN, J. The seventeenth subdivision of section eight of article first of the constitution of the United States, confers the power upon congress " to exercise exclusive legislation in all cases whatever over such district (not exceeding ten miles square), as may by cession of particular states and the acceptance of congress, become the seat of the government of the United States, and to exercise the like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings."

Exclusive legislation is exclusive jurisdiction.

When land is purchased by the United States, for the purposes specified, with the consent of the state in which the land is situate, the land or territory so purchased falls, by force of the above quoted provision of the constitution, under the exclusive jurisdiction of the United States. The consent

of the state to the purchase by the United States is a sur-render or cession of the sovereignty of the state over such territory.

In the case of the lands in question, the state of New York not only gave its consent to the purchase of them by the United States, but also in express terms ceded its jurisdiction over them to the United States.

The object of the reservation by the state of the right to execute the process of the state upon the lands or territory ceded, was to prevent such territory from becoming a sanctuary for criminals and for debtors and their property.

The officers of the state, in executing such process under the reservation, act under the authority of the United States.

The state and its courts have no jurisdiction over crimes committed upon the ceded territory. They are committed against the peace and dignity of the United States and not of the state of New York. Except by force of the consent of the United States expressed in the reservation contained in the act of cession, neither the civil nor criminal process of the courts of the state could be executed upon the ceded territory, any more than they could be beyond the territorial limits of the state. Such ceded places probably are no part of the state, for it has no jurisdiction there. The inhabitants of such places, actually dwelling therein, are not entitled to the exercise of the elective franchise at state elections, nor to the other political privileges exclusively belonging to the citizens of the state.

The district of Columbia was ceded to the United States by the states of Maryland and Virginia, under the first branch of the provision of the constitution above quoted.

Congress has exclusive jurisdiction over that district and its inhabitants. That district forms no part of the states or of either of them by which it was ceded. The inhabitants of the district are not citizens of those states, nor enumerated as such, and are not entitled to the civil and political rights and privileges belonging exclusively to the citizens of those states.

These questions I regard as settled. They follow from the

exclusive legislative jurisdiction—vested in congress. The "like authority" is vested in congress by the second branch of the provision of the constitution above quoted, over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts and other needful buildings. Congress is vested with the same exclusive jurisdiction over such places as it possesses over the District of Columbia, and the same results follow.

If judgment should be given for the plaintiff in this action, it would be that she recover her dower in the lands in question; that it be admeasured and that a writ of possession issue to put her into the possession of the part assigned to her. Such process would affect the property of the United States.

I am of the opinion that the courts of the state of New York have no jurisdiction over the lands in question. (1 Kent's Com. 402; 3 Story on the Constitution, 96; State agt. Clary, 8 Mass. R. 72; State agt. Young, 1 Hall's Journal, 47; People agt. Godfrey, 17 Johns. R. 225; Untied States agt. Cornell, 2 Mason's R. 60–91; United States agt. Davis, 5 Mason's R. 356; United States agt. Ames, 1 Wood. and M. 76; Cohens agt. Virginia, 6 Wheat. 424.)

It was contended that the United States not having purchased the right of the plaintiff in the lands in question, had not yet acquired jurisdiction over them, for the jurisdiction was ceded over them "when purchased by the United States."

The United States, by purchase, acquired the fee of the lands from the persons seized in fee of them. The plaintiff at the time of such purchase, was a wife, not a widow, and her right to dower in the lands of her husband, was a mere possibility; it was not an interest in the lands; it could be released to one having an estate in the lands, but was not the subject of bargain and sale, or of grant or transfer.

I do not think that there is anything in this position taken by the plaintiff.

I think the graver question is, whether the plaintiff was not divested of this mere possibility by force of the act of

the legislature of this state referred to, and the purchase by the United States.

This mere possibility depended upon law, and was within the power of the legislature.

The act gave the consent of the state that the lands might be purchased by the United States for the erection thereon of a custom house, post-office, &c., and enacted that "the said United States may have, hold, use, occupy and own the said lands when purchased."

The United States purchased them of the persons owning the fee, and representing every interest in them (*Moore* agt. *Mayor of New York*, 4 *Seld.* 110).

Having arrived at the conclusion that the complaint must be dismissed upon the ground that the courts of the state have no jurisdiction over the lands in question, it is not necessary to determine the right of the plaintiff to dower in said lands ; or whether the defendants are occupants within the meaning of the statute prescribing against whom eject-ment must be brought.

The complaint is dismissed.