JOSEPH A. STEVENS *vs.* BENJAMIN B. THATCHER, and another.

Penobscot.    Opinion December 13, 1897.

*Indians.    Treaties.    Attachment.    R. S., c. 81, § 26.*

The incorporation of territory within the boundaries of the state into a town, county, or other political division is a purely political act; and such power of incorporation by the state is unaffected by any stipulations in the Indian treaties between Massachusetts and the Penobscot Indians of June 29, 1818, and between Maine and the same Indians August 17, 1820.

White Squaw Island in the Penobscot river above Old Town lies west of the centre line of the river at ordinary pitch of water. It is therefore within the territorial limits of the riparian town of Argyle on the west side of the river.

*Held;* that a certificate of attachment of bulky personal property attached upon White Squaw Island should be filed in Argyle, and not in Greenbush, the oldest adjoining town.

AGREED STATEMENT OF FACTS.

This action was trover for a certain lot of peeled hemlock logs. Plaintiff, as a deputy sheriff of Penobscot County, on the 6th day of July, 1896, attached the logs upon a writ Augustus B. Clifford vs. Jos. E. Clifford, requiring him to make the attachment to secure and enforce the labor lien of said Augustus B. Clifford. All of the logs when attached were in two rafts on the east shore of White Squaw Island and between said island and the centre line of Penobscot river at ordinary pitch of water, at or near the place as shown on a plan.

Within five days after the attachment, the officer duly filed a copy of his return thereof in the office of the town clerk of the town of Greenbush, where it was duly recorded.

No copy of his return was filed or recorded in the town of Argyle and no keeper was put on the logs.

The writ was in due form to enforce a log-lien claim and was duly entered at the return term thereof in the Bangor Municipal Court, where said writ was returnable. While the action was pending in said court, and after ten days from the date of said attachment, and before rendition of judgment against the logs, they

were purchased of one I. W. Bussell, who claimed to be the owner of them, by the defendants who had no knowledge of the attachment, and were taken into possession by the defendants.

The Penobscot River flows on both sides of said White Squaw Island.

The locality where said logs were when attached and the distances from the Greenbush shore to the centre line of said river, thence to and across said island and from said island to Argyle shore, are shown by a plan in the case.

Said White Squaw Island is one of the islands in Penobscot river above Old Town, belonging to the Penobscot tribe of Indians, and the shore is leased by the agent of said tribe to Penobscot Lumbering Association and was so leased at date of said attachment.

It was agreed that in determining the question of the validity of filing and recording the attachment in Greenbush, the acts incorporating said Greenbush and Argyle, and all the treaties with said Indians, the state plan of said island, recorded in Penobscot registry of deeds, may be used as evidence for the consideration of the court.

If the court should find the attachment as made and recorded in said Greenbush is valid, the defendants were to be defaulted, otherwise plaintiff to be nonsuited.

*W. C. Clark,* for plaintiff.

White Squaw Island and its leased shore was an unincorporated place, with Greenbush the oldest adjoining town in the county; and, therefore, Greenbush is the town in which to file and record the attachment. R. S., c. 81, § 26.

Any grant, individual or corporate, by the state, of land on banks of the river, opposite White Squaw Island, in what are now Greenbush and Argyle, must be limited in proprietorship to and by the limits of the prior grant to the Indians. *Morrison* v. *Keene,* 3 Maine, 474.

By this original grant to the Indians, of this island, they took limits to the Greenbush bank of the river on one side and to the Argyle bank on the other.

The construction that the proprietorship of Argyle and Green-bush extends to the thread is negatived, first, by the words of the treaty, "they shall have, enjoy and improve all the four townships described as aforesaid, and all the islands in Penobscot river above Old Town;" secondly, by the last two sentences of the treaty of 1818: "It is further agreed by and on the part of said tribe, that said commonwealth shall have a right at all times hereafter to make and keep open all necessary roads, through any lands hereby reserved for the future use of said tribe. And the citizens of said commonwealth shall have a right to pass and repass any of the rivers, streams and ponds, which run through any of the lands hereby reserved for the purpose of transporting their timber and other articles through the same."

The Indians therefore took the dry land, the shore and the water as it flows, to the bank across stream upon either side of the island, including, of course, the rafting place where these logs were attached.

There is nothing in act incorporating either town named that shows intention to interfere with the proprietorship limits of White Squaw Island.

Proprietorship limits of the Indians:—*Storer* v. *Freeman,* 6 Mass. p. 438; *Morrison* v. *Keene,* 3 Maine, 474; *Perkins* v. *Oxford,* 66 Maine, 545, and cases cited; 3 Kent Com. 4th ed. pp. 411, 412.

The Penobscot Indians are a nation.

*J. F. Gould,* for defendants.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WIS-WELL, SAVAGE, JJ.

EMERY, J. White Squaw Island in the Penobscot river above Old Town is said, in the statements of facts, to lie west of the centre line of the river at ordinary pitch of water. It is therefore admitted by the plaintiff to be within the territorial limits of the riparian town of Argyle on the west side of the river, unless it has been reserved or excluded from the act of incorporation of the town of Argyle by virtue of some prior Indian treaty.

The only "Indian Treaties" cited by the plaintiff are, that between Massachusetts and the "Penobscot Indians" June 29, 1818, and that between Maine and the same Indians August 17, 1820, both of which are printed in Acts and Resolves of 1843 page 253 et seq. In these treaties it was stipulated that the Penobscot tribe of Indians "should have, enjoy and improve . . . . all the islands in the Penobscot River above Old Town." The plaintiff contends that this stipulation debarred the legislature from afterward including any of these islands (including White Squaw Island) within any incorporated town. This contention cannot be sustained.

The treaties cited cannot be held to have exempted the Penobscot Indians or their lands from the political jurisdiction and power of the state. Notwithstanding any treaties with Indians upon the territory of Maine, the political jurisdiction of the state includes every person, and every acre of land within its boundaries. *State v. Newell*, 84 Maine, 465. The incorporation of any territory within those boundaries into a town, county, or other political division is a purely political act, and such power of incorporation is unaffected by any stipulations in the treaties cited.

Those treaties secured property rights in White Squaw Island to the Penobscot Indians, but the incorporation of the territory of the island with other territory into a town does not deprive the Indians, or any other owners of lands within those limits, of any property rights. The Indians can "have, enjoy and improve" their island, notwithstanding its inclusion within the limits of Argyle.

It follows that the certificate of attachment of bulky personal property attached upon White Squaw Island should have been filed in Argyle, instead of Greenbush, the oldest adjoining town. This not having been done, the plaintiff acquired no title or right against the defendants, the purchasers of the logs.

*Plaintiff nonsuit.*