# STATE OF NORTH DAKOTA ex rel. E. B. BAKER v. MOUNTRAIL COUNTY, NORTH DAKOTA.

(149 N. W. 120.)

**Original writ — quo warranto — application for — Indian reservation — jurisdiction — state — political and governmental functions.**

1. On an application to this court for an original writ in the nature of quo warranto, commanding the respondent (Mountrail county) to show cause by what authority it assumes to exercise jurisdiction and governmental control over certain territory embraced in what is known as the Fort Berthold Indian Reservation, certain acts of Congress relating to the subject, and especially § 4, subdivision 2 of the enabling act, and the compact with the United

---

Note.—As to who may maintain quo warranto to test validity of organization of a political subdivision of a state, see note in 21 L.R.A. (N.S.) 685.

States embraced in subdivision 2, § 203 of our state Constitution, are construed and held to vest in the state all jurisdiction not expressly reserved in the Congress of the United States over the lands in question, and that Congress relinquished to the state the right to exercise political and governmental functions over such territory.

**County organization — constitutionality of act — defect in title — estoppel.**
2. The territory now embraced in Mountrail county was segregated from Ward county, and duly organized as a political subdivision of the state, at the general election in 1908. Ward county was organized under chap. 50, Laws of 1891, and, conceding for the purposes of the case that such act was unconstitutional on account of a defect in its title, it is held that by the long time which has elapsed the relator is now estopped to question the due organization of such county, and he is likewise estopped from questioning the legality of the organization of Mountrail county.

Opinion filed October 22, 1914.

Original application for the issuance of a writ in the nature of quo warranto.

Application denied.

*B. A. Dickinson,* Ryder, N. D. (*Bradford & Nash,* of counsel), Minot, N. D., for relator.

*F. F. Wyckoff,* State's Attorney of Mountrail County, Stanley, N. D., *Palda, Aaker, & Greene,* Minot, N. D., for respondent.

Fisk, J. This is an application in the name of the state on the relation of E. B. Baker, but by the consent and on the motion of the attorney general for leave to file an information in the nature of quo warranto, invoking the original jurisdiction of this court to issue its writ commanding the county of Mountrail to show cause by what warrant or authority it exercises governmental functions in that certain territory lying north and east of the Missouri river in this state, and known as Fort Berthold Indian Reservation. On the filing of such application an order was issued by the chief justice, requiring respondent, the county of Mountrail, to show cause why such application should not be granted. On the return day both the relator and the respondent appeared by their respective counsel, whereupon written objections to the granting of such application were presented and filed, the grounds thereof being as follows:

"1st. That the application and petition is that of a private relator, and to him the remedy by quo warranto is not available.

"2d. Because it appears from the face of the petition, and also from the records of the office of the secretary of state of North Dakota, and the records of the office of the governor of said state, of which records this court is asked to take judicial notice in so far as they relate to the subject-matter of this inquiry, that neither the relator herein, nor the state on the relation of its attorney general, is or would be entitled to the relief prayed for in the petition upon which this court's order to show cause was issued, for the following reasons:

"1. Because it appears therefrom that this court is asked to exercise its prerogative authority, not for the defense or protection of the interests of the state at large, but, on the contrary, for the purpose of compelling the state to suspend the exercise of its power and authority over persons and property within its boundaries and subject to its jurisdiction.

"2. That the relator and the public are estopped to deny the due organization of the county of Mountrail and the establishment of its boundaries, including the territory said to have been a part of an Indian reservation, the boundaries of such county having been established by the vote of the electors at a general election held six years prior to the filing of this petition, during which period the exercise of its power and authority by the respondent county has been acquiesced in by all of the people within its boundaries as so established.

"3. That it does not appear that the present organization of said county, and its exercise of authority over the territory within the boundaries established by such election, works hardship or oppression upon the property interests or personal rights of any citizen of this state.

"4. It is manifest that if the relief sought be granted, it will operate to exempt persons residing within the territory formerly comprising a part of an Indian reservation, but now a part of the domain subject to the jurisdiction of this state and its government, from taxation for the support of the state government, and exempt its inhabitants and property from the control and authority of the agencies established by the government, and would relieve and exempt the inhabitants of such territory from responsibility as citizens of this state and from par-

ticipation in the administration of its affairs, and from the protection of its laws."

Oral arguments were presented on behalf of the relator and the respondent upon the merits of the controversy, and it was stipulated that the court might dispose of such merits in passing upon the application; and as we interpret the statements of the distinguished counselor who argued the case for respondent, he concedes that it is a proper case for the exercise by this court of its original jurisdiction, and he expressly waives any points of objection to the practice pursued by counsel for relator, and invokes the judgment of the court upon the merits of the controversy. In view of this concession and request from respondent's counsel, and it appearing that it is a proper case for the exercise of our original jurisdiction, we shall proceed at once to a consideration of the merits.

Relator's chief contention, as we understand it, is that the lands embraced within the territory known as the Fort Berthold Indian Reservation are not and could not, under the law, be included within the limits of any county or political subdivision of the state, solely because of the fact that such lands were reserved, and set apart by the government for the use and benefit of certain Indians. Such contention, if sound, is very far reaching, as it not only affects the county organization of Mountrail but of Ward county also, from which Mountrail was segregated; and it calls in question, therefore, the validity of the organizations of these political subdivisions, and, no doubt, this is true as to other counties of the state. Manifestly, therefore, the case presents questions of the gravest moment, and we regret that we are unable to devote to it the time which its importance deserves. The limited time at our disposal in this, as in most all applications for the exercise of our original jurisdiction, owing to exigencies requiring almost immediate decision to the end that the same may be of any beneficial effect to the litigants, of necessity compels us to do little more than briefly state our conclusions.

We deem as wholly unsound the basic proposition advanced by relator's counsel, that these reservation lands are not and never were susceptible of incorporation within the limits of and as a part and portion of the territory of an organized county of the state. The fundamental fallacy of such contention lies, we think, in the erroneous assumption

that the government of the United States has never relinquished to the state its former exclusive and unlimited jurisdiction over such lands. While it still retains a limited or qualified jurisdiction for certain purposes over such lands, the Congress of the United States relinquished to the territory of Dakota by the organic act, and to the state of North Dakota by the enabling act, all jurisdiction and governmental authority over these lands and the inhabitants residing thereon not thus specially reserved to itself. Relator relies upon certain provisions contained in the second subdivision of § 4 of the enabling act, and in subdivision 2, § 203, of our state Constitution, which is the compact between this state and the United States whereby title is expressly reserved in the government to the unappropriated public lands lying within the boundaries of the state, and to all lands therein owned or held by any Indian or Indian tribe, and also providing "that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, *and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States.*"

That Congress did not intend by such provision of the enabling act to reserve an exclusive jurisdiction over Indian lands is well settled by the highest court in our land, Draper v. United States, 164 U. S. 240, 41 L. ed. 419, 17 Sup. Ct. Rep. 107; also by this court in State ex rel. Tompton v. Denoyer, 6 N. D. 586, 72 N. W. 1014, the opinion in which was written by Mr. Justice Bartholomew, and contains an exhaustive review of many authorities, both state and Federal. To attempt to add anything to what is there said would be presumptuous on the writer's part. We will content ourselves by quoting briefly therefrom. After reviewing the authorities and quoting at length from the unanimous opinion in Draper v. United States, supra, Judge Bartholomew says: "These authorities establish firmly the proposition that the jurisdiction reserved by the enabling act was not an exclusive jurisdiction. It did not take Indian lands out of the jurisdiction of the state where located, in the sense that the lands in another state are excluded. The United States retained all jurisdiction necessary for the disposition of the land and the title thereto; all jurisdiction necessary to enable it to carry out all treaty and contract stipulations with the Indians; all jurisdiction necessary to enable it to protect and

civilize its unfortunate wards. But the state had jurisdiction to tax the property of its citizens within the reservation, to enter thereon for the purpose of enforcing, by levy and sale, the collection of such tax. It had jurisdiction to punish its citizens for crime committed one against the other thereon. And the principle of these decisions logically and necessarily leads further, and gives the state the right to extend to its citizens lawfully upon such Indian lands all the privileges and immunities of the laws of the state, where the same in no manner conflict with the reserved jurisdiction of the United States."

Relator's counsel also rely upon § 1839, U. S. Rev. Stat. 1874, Comp. Stat. 1913, § 3464, and certain agreements entered into December 14, 1886, with the tribal Indians occupying this reservation; but it is apparent that these are of no controlling importance, as they were entirely ignored in the authorities above cited. Indeed, relator's counsel inferentially admit the weakness of their latter contention by directing our attention to the cases of Yellow Stone County v. Northern P. R. Co. 10 Mont. 414, 25 Pac. 1058, and Lone Wolf v. Hitchcock, 187 U. S. 553, 47 L. ed. 299, 23 Sup. Ct. Rep. 216, which they concede tend to support respondent's views. See also Stevens v. Thatcher, 91 Me. 70, 39 Atl. 282, and State ex rel. Crawford v. Norris, 37 Neb. 299, 55 N. W. 1086.

In conclusion, we entertain no doubt upon the proposition that the state rightfully exercises political and governmental jurisdiction and control over such lands vested in it by the Congress of the United States, sufficient to authorize it to include such territory within its political subdivisions for political and governmental purposes. We must therefore overrule relator's first contention.

But relator's counsel, under point 2 of their brief, challenge the right of the state and of Mountrail county to exercise governmental functions in such reservation, on the ground, to use the language of counsel, "that this reservation has never been attached to any county legally by any constitutional legislative enactment." They call attention to the fact that the act by which Ward county was attempted to be created, being chap. 50, Laws of 1891, is unconstitutional because the title thereof is in substance and effect the same as the title of the act which was held unconstitutional in Richard v. Stark County, 8 N. D. 392, 79 N. W. 863, and recognized as such in Schaffner v. Young,

10 N. D. 245, 86 N. W. 733. And they argue therefrom that Ward county had no legal existence as a political subdivision of the state in 1908, the date on which Mountrail county was segregated from Ward and organized as a county by itself. Conceding that chap. 50, Laws of 1891, is unconstitutional, it by no means follows that at this late day such *de facto* county organization will be interfered with by the courts. The very serious results which would necessarily follow from such a holding far outweigh any considerations of the relator, or supposed benefits which he might obtain through the relief which he seeks in this proceeding. On the plainest principles of justice the relator, as well as all persons similarly situated, are and ought to be forever estopped to question the legality of the organization of Ward county. For nearly a quarter of a century such *de facto* county has been recognized by everyone as a political subdivision of the state, and to upset such organization now would result in the most disastrous consequences imaginable. The same is true as to the organization of Mountrail county. Furthermore, this court in State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360, adjudged that such county was duly organized. That the relator is precluded by his laches at this time from questioning the organization of these counties is well settled by this court in the cases of State ex rel. Walker v. McLean County, 11 N. D. 356, 92 N. W. 385, and State ex rel. Madderson v. Nohle, 16 N. D. 168, 125 Am. St. Rep. 628, 112 N. W. 141. See also the authorities therein cited.

We conclude, therefore, that the petition of the relator for the foregoing reasons should be denied, and it is so ordered.