FRANK LA DUKE, Respondent, v. A. A. MELIN, Julius Jabs, and R. S. Williams, as the Board of Directors of Fort Totten School District No. 30, a Public Corporation, Appellants.

(177 N. W. 673.)

**Schools and school districts — school district appearing in contest and stipulating facts for determination on the merits could not claim on appeal that plaintiff chose wrong remedy.**

In this case an election was held for the selection of a schoolhouse site in Fort Totten school district No. 30 in Benson county. One site received fifty-one votes, and another site received twenty-two votes. The election board refused to count the fifty-one votes, on the ground that the site designated by them was within the boundaries of the Fort Totten military reservation (also, that thirty of such fifty-one votes were cast by persons residing within said military reservation), and declared that the site designated by the twenty-two voters was the site chosen at such election. La Duke, a taxpayer and elector in such school district, instituted an election contest. He caused notice of contest, setting forth fully the grounds on which he assailed the findings of the election board, to be served on the proper parties. Such parties appeared and answered on the merits. Later the plaintiff and defendants entered into a stipulation of facts, and submitted the matter to the district court for determination on the merits. No objection was made in the trial court to the procedure adopted.

It is *held:*—

1. That the defendants cannot raise the question in the supreme court that plaintiff has chosen the wrong remedy.

**United States — Fort Totten Military Reservation held no longer within exclusive control of United States.**

2. That the Fort Totten Military Reservation has been abolished by the Federal government, and that the lands formerly included therein are no longer within the exclusive governmental and political control of the United States.

**Indians — state may exercise political and governmental control over lands formerly within Fort Totten military reservation.**

3. That the state may rightfully exercise political and governmental control over lands, formerly within such military reservation, and reserved by the United States for Indian school and Indian agency purposes, to the extent of including them within its political subdivisions for political and governmental purposes.

**Schools and school districts — persons residing in former Fort Totten Military Reservation may vote at school election in which lands are included.**

4. That persons residing on the lands so reserved, and otherwise qualified to vote, are entitled to vote at an election in the school district in which such lands are included.

**Schools and school districts — schoolhouse site located on land in former military reservation included in district may be selected by voters.**

5. That a schoolhouse site located on such lands is within the school district, and may be legally selected by the voters of the district.

Opinion filed April 2, 1920. Rehearing denied April 29, 1920.

From a judgment of the District Court of Benson County, *Burr, J.,* defendants appeal.

Affirmed.

*W. M. Anderson* and *H. S. Blood,* for appellants.

*Wardrope & Butterwick,* for respondent.

CHRISTIANSON, Ch. J. This controversy involves the selection of a schoolhouse site in Fort Totten school district No. 30, in Benson county, in this state. The matter was submitted to the district court upon stipulated facts. From the stipulated facts it appears that the territory which was embraced within the Fort Totten military reservation is wholly within the boundaries of the school district; that at the election to select the schoolhouse site fifty-one ballots were cast for a site situated on land which formed a part of such military reservation, and twenty-five ballots were cast for a site on land within the school district, but outside of such military reservation; that thirty of the fifty-

one votes cast for the site located on land within said military reservation were cast by persons who, at the time of such election, resided upon territory which formed a part of said military reservation. The election board rejected all ballots cast for the site located within the boundaries of the military reservation, and in its return certified that the site located outside of such boundaries had received a majority of all the legal votes cast at said election. Thereupon the plaintiff, who is a duly qualified elector and taxpayer in said school district and a patron of the public schools thereof, instituted a contest. The defendants, members of the board of directors of said defendant school district, appeared and answered. The parties thereupon submitted the matter to the district court for determination upon a stipulated statement of facts. The district court held that the election board erred in rejecting the ballots cast for the site situated within the military reservation; and that such site had received a majority of the legal votes cast at the election. Judgment was entered accordingly, and defendants have appealed.

Appellants contend:—

(1) That a contest will not lie in a case like the one at bar.

(2) That persons who reside upon the Fort Totten Military Reservation are not electors under the laws of this state.

(3) That the proposed schoolhouse site within the Fort Totten military reservation is not in fact within the school district.

(1) We do not find it necessary in this case to determine whether a contest will lie as to an election for the selection of a schoolhouse site. The district court is a court of general jurisdiction. Manifestly it was the tribunal in which any proceeding to set aside the findings of the election board must be instituted. The plaintiff caused notice of contest to be served upon the defendants. The defendants appeared and answered. Thereafter the parties entered into a stipulation of facts, which they submitted to the trial court, and asked that court to determine the questions of law arising upon the facts so stipulated. Hence, the trial court had jurisdiction of both the parties and the subject-matter. So far as the record shows, no objection was made, in any manner in the court below, to the form of the remedy. It is well settled that in these circumstances the defendants cannot now raise the question that the plaintiff should have pursued another remedy. Lobe v.

Bartaschawich, 37 N. D. 572, 164 N. W. 276; Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 597, 154 N. W. 654; 3 C. J. 723, 750.

(2) The land constituting the Fort Totten military reservation was part of the territory acquired in 1803 by cession from France. The military reservation was created by executive order in 1867. The Devils Lake Indian reservation, which was created the same year, included the military reservation within its outer boundaries. Later certain changes were made in the boundaries of the military reservation, the last change being made in 1887. The military reservation, as so defined, contained 9,000 acres. During all of this time the reservation was within the territory of Dakota, and the jurisdiction of the United States was necessarily paramount. In 1889, Congress provided "for the division of Dakota into two states and to enable the people of North Dakota, South Dakota . . . to form Constitutions and state governments. and to be admitted into the Union on an equal footing with the original states." [25 Stat. at L. 676, chap. 180.] See Enabling Act. No provision was made in such act of Congress for the retention by the United States of political authority, dominion, and legislative power over any of the so-called military reservations. The Constitution of North Dakota, however, provided: "Jurisdiction is ceded to the United States over the military reservations of Fort Abraham, Lincoln, Fort Buford, Fort Pembina, and Fort Totten, heretofore declared by the President of the United States'; provided, legal process, civil and criminal, of this state, shall extend over such reservations in all cases in which exclusive jurisdiction is not vested in the United States, or of crimes not committed within the limits of such reservations. N. D. Const. § 204.

There is nothing to show that any application was made by the United States for such constitutional provision, but, as it conferred a benefit, the acceptance thereof is to be presumed in the absence of any dissent on their part. Fort Leavenworth R. Co. v. Lowe, 114 U. S. 525, 529, 29 L. ed. 264, 265, 5 Sup. Ct. Rep. 995.

It appears that the Fort Totten military reservation ceased to be used for military purposes by the War Department in 1882, and has not since been so used. It further appears that the Secretary of War, by an order issued October 1, 1890, placed the abandoned barracks and

other buildings at the disposal of the Secretary of the Interior for Indian school purposes; and that ever since that time the Secretary of the Interior, through the Bureau of Indian affairs, has had full control over such buildings, and that the same have been utilized for the purpose of conducting an Indian school therein.

In 1901 the Indians made a treaty with the United States, by the terms of which they did "cede, surrender, grant and convey to the United States all their claim, right, title, and interest in and to all that part of the Devils Lake Indian Reservation now remaining unallotted, including the tract of land at present known as the Fort Totten military reserve, situated within the boundaries of the said Devils Lake Indian reservation, and being a part thereof." [33 Stat. at L. 319, chap. 1620.] By act of Congress, approved April 27, 1904, such treaty was modified and amended, and accepted and ratified as amended, and provision made to carry the same into effect.

In § 4 of the act it was provided "that the lands ceded to the United States under said agreement, including the Fort Totten *abandoned* military reservation, which are exclusive of 6,160 acres which are required for allotments, excepting sections 16 and 36 or an equivalent of two sections in each township, and such tracts as may be reserved by the President as hereinafter provided shall be disposed of under the general provisions of the homestead and town-site laws of the United States, and shall be opened to settlement and entry by proclamation of the President. . . . The President is also authorized to reserve a tract embracing Sullys Hill, in the northeastern portion of the *abandoned* military reservation, about 960 acres, as a public park." [33 Stat. at L. 322, chap. 1620.]

And in § 5 it was provided "that sections 16 and 36 of the land hereby acquired in each township shall not be subject to entry, but shall be reserved for the use of the common schools and paid for by the United States at $3.25 per acre, and the same are hereby granted to the state of North Dakota for such purpose; and in case any of said sections, or parts thereof, of the land in the said Devils Lake Indian reservation or Fort Totten *abandoned* military reservation should be lost to said state of North Dakota by reason of allotments thereof to any Indian or Indians now holding the same, or otherwise, the governor of said state, with the approval of the Secretary of the Interior, is hereby authorized to

45 N. D.—23.

locate other lands not occupied, in the townships where said lands were lost. . . ."

On June 2, 1904, the President issued his proclamation opening the lands for settlement in conformity with the provisions of the act of Congress. In the President's proclamation the lands so ceded by the Indians were declared to "be opened to entry and settlement and disposition under the general provisions of the homestead and town-site laws of the United States," except certain tracts (specifically described in the proclamation) which were reserved respectively for the Fort Totten Indian school, for agency purposes, for Sully's Hill Park, and for various churches and missions.

It has been noted that by the Enabling Act North Dakota was admitted as a state into the Union, "on an equal footing with the original thirteen states in all respects whatever." There was no reservation of sovereignty over any part of the public lands. Nor was there any provision in any prior treaty with the Indians, to the effect that the lands within the reservation should not be included within a state or territorial jurisdiction without the assent of the Indians. Langford v. Monteith, 102 U. S. 145, 26 L. ed. 53. Section 204 of the state Constitution recognized this condition. The cession of jurisdiction made in that section was, of course, made for the purpose such cessions are generally made, and it was accompanied by the conditions which are generally implied. It has been said by the highest authority that such cessions are "necessarily temporary, to be exercised only so long as the places continue to be used for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, jurisdiction reverts to the state." Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 525, 540, 29 L. ed. 264, 270, 5 Sup. Ct. Rep. 995; see also McCrary, Elections, 4th ed. p. 69. It will be noted that § 204 refers to four different military reservations. The other three military reservations have long since been abandoned, and the lands included therein become the property of private owners. It also seems obvious that the Fort Totten military reservation has ceased to exist. Congress referred to it as "the *abandoned* military reservation," and provided that the lands included therein (except such tracts as might be reserved by the President for stated purposes) "*shall* be disposed of under the general provisions of the homestead and town-site laws of the

United States." And by an act approved June 30, 1919, Congress "authorized and directed" the Secretary of the Interior "to sell and convey . . . to the public school district in which the land is situated," the site involved in this case, for which the fifty-one votes were cast.

The land reserved by the President for the Fort Totten Indian school was not reserved for any military purpose, but for a wholly different one. The United States held the property for the purpose for which it was reserved in the President's proclamation, and not for the purpose for which jurisdiction was ceded under § 204 of the state Constitution. Even if such lands be deemed part of an Indian reservation, the property of persons other than Indians situated thereon might be subjected to taxation by the laws of this state. Maricopa & P. R. Co. v. Arizona, 156 U. S. 347, 39 L. ed. 447, 15 Sup. Ct. Rep. 391; Thomas v. Gay, 169 U. S. 264, 42 L. ed. 740, 18 Sup. Ct. Rep. 340; Utah & N. R. Co. v. Fisher, 116 U. S. 28, 29 L. ed. 542, 6 Sup. Ct. Rep. 246; Wagoner v. Evans, 170 U. S. 588, 591, 42 L. ed. 1154, 1156, 18 Sup. Ct. Rep. 730; see also Montana Catholic Missions v. Missoula County, 200 U. S. 118, 50 L. ed. 398, 26 Sup. Ct. Rep. 197. And under the rule announced by this court in State ex rel. Tompton v. Denoyer, 6 N. D. 586, 72 N. W. 1014, and reaffirmed in State ex rel. Baker v. Mountrail County, 28 N. D. 389, 149 N. W. 120, persons resident thereon, possessing the qualifications of electors in this state, are entitled to vote, and it is the duty of the proper authorities to afford them an opportunity to do so. See also Hankey v. Bowman, 82 Minn. 328, 84 N. W. 1002; McCrary, Elections, 4th ed. p. 69.

We are of the opinion that the Fort Totten military reservation has ceased to exist; that the state may rightfully exercise political and governmental jurisdiction over the lands reserved for Indian school and Indian agency purposes, to the extent of including such territory within its political subdivisions for political and governmental purposes; and that, hence, persons residing on such lands, possessing the qualifications of electors, are legal voters in the political subdivision in which such lands are included.

In this case it was stipulated, and the trial court found, that all of the persons whose ballots were disregarded by the election board possessed all the qualifications of electors and were entitled to vote at said

election, "unless excluded therefrom" by reason of the fact that they were residing on lands within the boundaries of the so-called Fort Totten Military Reservation. It follows from what has been said above that the election board erred in disregarding such ballots, and that the trial court was correct in holding that they must be counted.

(3) The contention that the site selected is outside of the school district is disposed of by what has been said above. But it is pointed out that in the act authorizing the Secretary of the Interior to sell and convey the site to the school district, it was *"provided* that Indian children shall be permitted to attend any school established thereon on an equality with white children." And it is contended that the school district may not accept the site with the condition attached. Even though the school district could not accept the condition that would not invalidate the election. Manifestly, title to a site cannot be obtained until after it has been selected, and if, for any reason, it should become impossible to obtain title to a site chosen, certainly that would not result in the selection of a site which had received a lesser number of votes. In such case, of course, it would be essential to hold another election. We do not, however, construe the proviso of the act of Congress as appellants contend that it should be construed. We do not believe that there was any intention on the part of Congress to place upon the school district the duty of educating Indian children, wards of the nation, who are now attending the Indian school. In our opinion the intention of Congress was merely to provide that Indian children residing within the school district, and otherwise entitled to attend school within the district, should be permitted to do so "on an equality with white children." Such provision was doubtless inserted through an abundance of caution. It added nothing to the obligations of the district or the rights of such children. For the enabling act and the state Constitution both provide "for the establishment and maintenance of a system of public schools which shall be open to all children" of the state of North Dakota. Enabling Act, § 4, Const. § 147.

It follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

BIRDZELL, ROBINSON, and BRONSON, JJ., concur.

GRACE, J., concurs in the result.