## SCHOOL DISTRICT NO. 20 OF PENNINGTON COUNTY, Appellant, v. STEELE, County Auditor, et al, Respondents.

### (195 N. W. 448.)

(File No. 5248.  Opinion filed October 18, 1923.)

**Schools and School Districts—Education—Tuition—United States Land Used for Indian Purposes Not a Part of "School District," Though Within Territorial Boundaries.**

A child who lived on land of the United States on which a federal Indian school was located did not reside in the school district within the territorial boundaries of which the land was situated, under Rev. Code 1919, Sec. 7517, as amended by Laws 1921, c. 214, requiring school districts to pay tuition for attending high school by pupil living in district, since such land was not a part of the district under Laws 1895, c. 128, ceding jurisdiction over such lands to the federal government.

Appeal from Circuit Court, Pennington County; Hon. WALTER G. MISER, Judge.

Action by School District No. 20 of Pennington County, S. D., against Myra K. Steele, County Auditor of Pennington County, S. D., and others. Judgment of dismissal, and plaintiff appeals. Reversed and remanded.

*Bangs & Wood* and *Turner M. Rudesill,* all of Rapid City, for Appellant.

*Schrader & Lewis* and *Stanley & Jeffers,* all of Rapid City, for Respondents.

Appellant cited: Fed. Const., Art. I, Sec. 8, Subd. 17; United States v. Tucker, 122 Fed. 522; Sec. 2, Chap. 129, Laws of 1895; 16 C. J. Sec. 172; Sinks v. Reese, 19 Ohio St. 306; Ft. Leavenworth Ry. Co. v. Lowe, 114 U. S. 525, 29 L. ed. 264; U. S. v. Meagher, 37 Fed. 875; 15 Cyc. 294; 39 Cyc. 730; Town of Highlands, 22 N. Y. Supp. 137; Lasher v. State (Tex. App.), 17 S. W. 1064; United States v. Carnell, 2 Mason 60, 25 Fed. Cas. No. 14867; Mitchell v. Tibbetts, 17 Pick. 298; McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830; Steele v.

Halligan, 229 Fed. 1011; Commonwealth v. Cleary, 8 Mass. 72; In re Ladd, 74 Fed 31; Benson v. United States, 136 U. S. 325, 36 L. ed. 991; Battle v. United States, 209 U. S. 36, 52 L. ed. 670; Sharon v. Hill, 24 Fed. 726; State v. Willett, 97 S. W. 299; Cessation of Jurisdiction by States, 7 Op. Atty. Gen. 628; State v. Mack, 47 Pac. 763; Crook, Horner & Co. v. Hotel Co., 54 Fed. 604; Van Brockland v. Anderson, 117 U. S. 151, 29 L. ed. 845; 15 Cyc. 294.

Respondent cited: Chicago & R. I. P. Ry. Co. v. McGlinn, 114 U. S. 542, 29 L. ed. 270; Barrett v. Palmer, 135 N. Y. 336; La Duke v. Melon (N. D.), 177 N. W. 673; State v. Montrail (N. D.), 149 N. W. 120; 26 R. C. L. 1442, Sec. 99; Lebo v. Griffith (S. D.), 173 N. W. 840; Maricopa, etc., R. R. Co. v. Arizona, 156 U. S. 347, 15 Sup. Ct. 891, 39 L. ed. 447; Thomas v. Gay, 169 U. S. 264, 18 Sup. Ct. 340, 42 L. ed. 740; Utah, etc., R. Co. v. Fisher, 116 U. S. 28, 6 Sup. Ct. 246, 29 L. ed. 542; Wagner v. Evans, 170 U. S. 588, 591, 19 Sup. Ct. 730, 42 L. ed. 1154; 26 Sup. Ct. 197, 50 L. ed. 398; Hanken v. Bowman, 82 Minn. 322, 84 N. W. 1002; McCrary on Elections (4th Ed.), 69.

GATES, J. By the provisions of section 7517, Rev. Code 1919, as amended by chapter 214, Laws 1921, an eighth grade graduate may attend high school, and his home district is compelled to pay his tuition. His home district is defined as the district in which his parents or guardian reside. Certain children whose parents reside within the territorial boundaries of the plaintiff district attended high school in Rapid City. A bill for their tuition presented to plaintiff district was refused payment. This is an injunction action to restrain the county superintendent of schools and the county auditor from enforcing payment of said bill. A demurrer to plaintiff's complaint upon the ground that no cause of action was stated was sustained. The plaintiff elected to stand upon the complaint, whereupon final judgment was entered dismissing the action upon its merits. Therefrom the plaintiff appeals.

The parents of the children are employed by the federal Indian school located in plaintiff district and reside upon lands of the United States used for the purposes of such school. It is the contention of appellant that the state has ceded jurisdiction over such land to the federal government; that such lands, while

within the boundaries of the district, are not a part of the district; that residents upon said lands are not residents of the district; and therefore that appellant is not liable for the tuition fees of the children in question.

Chapter 129, Laws 1895, enacted by the Legislature of this state was as follows:

"Section 1. *Land May Be Condemned for Public Works.* The United States shall have power to purchase or to condemn in the manner prescribed by law, upon making just compensation therefor, any land in the state of South Dakota required for public works or other purposes of the government of the United States.

"Sec. 2. *Jurisdiction Ceded.* The jurisdiction of the state of South Dakota in and over the land mentioned in the preceding section when purchased or condemned by the United States shall be and the same is hereby ceded to the United States; provided, that the jurisdiction hereby ceded shall continue no longer than the said United States shall own or occupy the said land.

"Sec. 3. *Conditions.* The said consent is given and the said jurisdiction ceded upon the express condition that the state of South Dakota shall retain concurrent jurisdiction with the United States in and over the said land in so far that all civil process in all cases and such criminal or other process as may issue under the laws or authority of the state of South Dakota against any person or persons charged with crimes or misdemeanors committed within said state may be executed therein in the same way and manner as if such consent had not been given or jurisdiction ceded, except in so far as such process may affect the real and personal property of the United States.

"Sec. 4. *Title.* The jurisdiction hereby ceded shall not vest until the United States shall have acquired the title to the said lands by purchase, grant, or condemnation, and so long as the said lands shall remain the property of the United States, when acquired as aforesaid and no longer, the same shall be and continue exonerated from all taxes, assessments and other charges which may be levied or imposed under the authority of this state."

Presumably pursuant to this act the federal government in August and September, 1896, purchased a part of the land now used for the Indian school. Other land for such school was acquired after the enactment of Rev. Pol. Code 1903, §§ 2-7.

Whether the revision made any change in the real effect of the act of 1895 it is unnecessary for us to consider, for the reason that the parents of the children are alleged in the complaint to reside upon the lands acquired in 1896.

The basic question before us is then the proper interpretation of said legislative act of 1895.

The case of McMahon v. Polk, 10 S. D. 296, 73 N. W. 77, 47 L. R. A. 830, was an election contest. Therein this court said:

"The vote of R. W. Wells, cast at Sturgis precinct for appellant, was rejected by the court as illegal and void upon the ground that said Wells was a nonresident of the precinct, having his place of abode within the military reservation of Ft. Meade; and to this point our attention is directed by the first assignment of error. By the fifth subdivision of section 18, art. 26, of the Constitution, jurisdiction over the military reservation of Ft. Meade is surrendered to the United States without reservation other than the right to serve legal process in certain cases; and the question presented by the record is whether a person in no way connected with the army or navy may, by long and continuous residence within the boundaries of the reservation thus ceded, acquire the right to vote at an election held in the county where the same is situated, pursuant to the law of the state. In his Commentaries on the Constitution (section 1227), Judge Story, in treating the eighth section of the first article of the Constitution authorizing Congress to exercise exclusive legislative power over military reservations obtained by the consent of the state in which the same are situated, says: 'The inhabitants of those places cease to be inhabitants of the state, and can no longer exercise any civil or political rights under the laws of the state.' The doctrine resting upon and sustained by an unruffled current of authority seems to be that all political powers and jurisdiction over a military reservation, not expressly retained by the state, are surrendered absolutely to the general government by a voluntary transfer of lands for the exclusive use of the army or navy; and consequently a person residing thereon acquires none of the constitutional qualifications of an elector. In re Town of Highlands (Sup.), 22 N. Y. Supp. 137; Opinion of Judges, 1 Metc. (Mass.) 580; Sinks v. Reese, 19 Ohio St. 306; Com. v. Clary, 8 Mass. 72; McCrary, Elect. (4th Ed.) § 89. As the foregoing applies with equal force

to the case of Charles D. Minard, a soldier stationed at Ft. Meade, the court very properly held his vote cast for appellant to be illegal and void.   Residence upon the reservation from the date of his discharge to the time of re-enlistment did not make him a qualified elector."

Counsel for respondent assert that such decision was rendered under a mistaken idea of the law.   They rely on the following cases as sustaining the action of the trial court:   C., R. I. & P. Ry. Co. v. McGinn, 114 U. S. 542, 5 Sup. Ct. 1005, 29 L. ed. 270; Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. ed. 264; Barrett v. Palmer, 135 N. Y. 336, 31 N. E. 1017, 17 L. R. A. 720, 31 Am. St. Rep. 835; La Duke v. Melin, 45 N. D. 349, 177 N. W. 673; State ex rel Baker v. Mountrail Co., 28 N. D. 389, 149 N. W. 120; Lebo v. Griffith, 42 S. D. 198, 173 N. W. 840.

In the Ft. Leavenworth Case the right of the state to tax railway property within the ceded land was sustained by reason of a reservation of such power in the act of cession.   The reasoning of the opinion, however, fully sustains the decision of this court in McMahon v. Polk.

The essence of the decision in the McGlinn Case is found in the following quotation therefrom:

"It is a general rule of public law, recognized and acted upon by the United States, that whenever political jurisdiction and legislative power over any territory are transferred from one nation or sovereign to another, the municipal laws of the country, that is, laws which are intended for the protection of private rights, continue in force until abrogated or changed by the new government or sovereign.   By the cession public property passes from one government to the other, but private property remains as before, and with it those municipal laws which are designed to secure its peaceful use and enjoyment.   As a matter of course, all laws, ordinances, and regulations in conflict with the political character, institutions, and constitution of the new government are at once displaced.   Thus, upon a cession of political jurisdiction and legislative power—and the latter is involved in the former—to the United States, the laws of the country in support of an established religion, or abridging the freedom of the press, or authorizing cruel and unusual punishments, and the like, would
38—Vol. 46, S. D.

at once cease to be of obligatory force without any declaration to that effect; and the laws of the country on other subjects would necessarily be superseded by existing laws of the new government upon the same matters. But with respect to other laws affecting the possession, use and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity, which are strictly of a municipal character, the rule is general, that a change of government leaves them in force until, by direct action of the new government, they are altered or repealed. American Insurance Co. v. Canter, 1 Pet. 542; Halleck, International Law, c. 34, § 14."

This decision has no application to the case at bar. Here the acts of the Legislature regulating school districts were enacted after the cession, and moreover such acts are not acts of a "municipal character" within the meaning of that decision, but are in their nature governmental. For the same reason the decision in Barrett v. Palmer is inapplicable.

The case of State ex rel Baker v. Mountrail Co. was a case concerning an ordinary Indian reservation. It was therein held that the Enabling Act relinquished to the state the right to exercise political and governmental functions over such territory except as reserved in the Congress.

The case of La Duke v. Melin concerned land formerly a part of Ft. Totten military reservation, jurisdiction over which had been ceded to the United States. The court held that the military reservation had ceased to exist, and that the land was then held for a purpose different from that for which jurisdiction had been ceded, and that the state might rightfully exercise political and governmental jurisdiction over it to the extent of including it within the political subdivisions of the state for political and governmental purposes. Such also was the effect of the decision in Lebo v. Griffith, a case involving lands in an ordinary Indian reservation. No question of cession of jurisdiction by the state to the United States was involved therein.

After thoroughly considering the question before us and what the effect thereof is likely to be, we are forced to the conclusion that the lands on which the parents of the children in question reside, while within the territorial boundaries of the appellant district, form no part of such district. Consequently,

the parents are not residents of such district, and the district is not liable for the tuition in question.

The judgment appealed from is reversed, and the cause is remanded, for further proceedings in harmony with this opinion.

Note.—Reported in 195 N. W. 448.   See, Headnote, American Key-Numbered Digest, Schools and School Districts, Key-No. 30, 35 Cyc. 843 (1924 Anno.).